**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| DESIGNER BRANDS INC., DSW SHOE WAREHOUSE, INC., AND TOPO ATHLETIC LLC, | )<br>)<br>)<br>) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| SONY MUSIC ENTERTAINMENT, SONY MUSIC PUBLISHING (US) LLC, UMG RECORDINGS, INC., UNIVERSAL MUSIC PUBLISHING, INC., BMG RIGHTS MANAGEMENT (US) LLC, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) |
| *Defendants*. | |

**JURY TRIAL DEMANDED**

**Case No. _____**

**Judge _____**

**Magistrate Judge _____**

**COMPLAINT FOR A DECLARATORY JUDGMENT**

Plaintiffs Designer Brands Inc. ("DBI"), DSW Shoe Warehouse, Inc. ("DSW"), and Topo Athletic LLC ("Topo"; DBI, DSW and Topo are collectively are  "Plaintiffs" or the "DBI Entities"), bring this action against Sony Music Entertainment ("SME"), Sony Music Publishing (US) LLC ("SMP"), UMG Recordings, Inc. ("UMG"), Universal Music Publishing Group, Inc. ("UMPG"), and BMG Rights Management (US) LLC ("BMG"; collectively, with SME, SMP and UMP, "Defendants" or the "Labels"), seeking a declaratory judgment that DSW, along with their affiliates and subsidiaries, do not infringe any valid copyright held by the Labels.

**INTRODUCTION**

1.      Every day, thousands of users include music in posts on their accounts on websites like Instagram, TikTok, Facebook, YouTube and other social media "platforms". Social media platforms host these accounts specifically so individuals, groups and businesses can post content

that to be published by the platform on the Internet. Social media platforms like Instagram, TikTok and Facebook also offer their users the ability to enhance their posts by adding content provided by the platform or other authorized entities via the platform, including music.

2.      Indeed, many times, users add music to their post from music libraries that are available from the social media platform itself. Users upload videos to their accounts (without music), add a sound clip offered by the platform, and then post the video and music together. These actions are authorized and even encouraged by the platforms—as well as the Labels in this case, who claim to own copyrights to the musical compositions and recordings offered by the platform or otherwise available to social media users. Indeed, the Labels and the social media platforms themselves have touted in the press that they have reached license agreements that permit users to incorporate the Labels' music into their posts. And, on information and belief, the Labels are paid millions of dollars because users incorporate their music into posts shared on social media.

3.      DSW and Topo are longstanding, respected sellers of shoes and accessories around the country. Like other businesses in the modern age, they maintain social media accounts where they post in support of their brands. In so doing, DSW and Topo have followed the platforms' approved methods of incorporating music in their posts on Instagram, TikTok and other social media platforms. The Labels, however, now seek to pull the rug out from under DSW's business operations. In an about-face, the Labels have recently claimed that the very conduct that they previously encouraged and supported—*i.e.*, incorporating samples of music into social media posts—constitutes copyright infringement when done by DSW. Their apparent theory is that because DSW is operating a business, the Labels' promises that users of social media were free to incorporate their music into their posts are no longer any good.

4.      The Labels' conduct has been misleading, improper, and violates the bargain the

Labels struck with social media users as well as the constraints of copyright law. The Labels and the platforms never excluded businesses from their prior promises that users of their platforms can incorporate the Labels' music as part of their posts. To the contrary, the Labels' press releases and the platforms' terms of service say the opposite. Moreover, on information and belief, the Labels have already been paid royalties for the music in the DBI Entities' accused social media posts. These royalties include not only payments that the DBI Entities are informed and believe are received by the Labels from social media platforms themselves but also from the free advertising that the Labels and their associated businesses receive. Indeed, incorporating a sample from a song in a social media post—whether by the DBI Entities or any other user—promotes sales of the complete musical works.

5.     The DBI Entities will not permit the Labels to bully them, abuse copyright law, and cast a shadow over their businesses with baseless threats of copyright infringement. Plaintiff DBI, through its subsidiaries, is one of the world's leading designers, producers, and retailers of footwear brands and accessories. DSW opened its first store in 1991 in Dublin, Ohio. Plaintiff DBI now owns subsidiaries that operate nearly 500 stores in 45 U.S. states, including via Plaintiffs DSW and Topo. The DBI Entities' business is fashion, in which brand and appearance are critical to success: the DBI Entities guard their own intellectual property carefully and respects the intellectual property of others. The DBI Entities  have relied upon the promises of the Labels and the social media platforms where they post content, and they have followed the law.

6.     The Labels' threats to file copyright infringement lawsuits based on the DBI Entities' lawful conduct are simply opportunistic attempts to extract still more money for copyrights on which they have already received full compensation. The Labels are major record labels with extensive experience in copyright law, and they know that a cause of action for

copyright infringement is expensive to defend and can carry with it statutory damages of up to $150,000 for each work, if the infringement is found to be willful. The power to assert a copyright claim, even unlawfully, is a cudgel that can be used to force unjustified settlement payments from innocent users of social media platforms, including the DBI Entities, who are only doing what the platforms permit and what the Labels have encouraged.

7. Thus, there is a real and justiciable controversy for this Court to resolve. Each Defendant has threatened to file suit for copyright infringement against DBI, DSW, and Topo. One major label has already filed such a lawsuit in this district: *Atlantic Recording Corporation, et al. v. Designer Brands, Inc., et al.*, Case No. 2:25-cv-00479-MHW-EPD (S.D. Ohio. Eastern Division) (the "*WMG* case"), which is currently pending before Judge Michael H. Watson and Magistrate Judge Elizabeth A. Preston Deavers. As described below, many of the copyrights in sound recordings and compositions that are the purported bases for the cause of action in the *WMG* case are the same copyrights that supposedly support the Labels' threatened cause of action against the DBI Entities. The threatened cause of action of the Labels in this case overlap with one another and also with the cause of action in the *WMG* case; these related cases should all be heard together in one forum and in a consolidated proceeding.

8. In short, this case is about the Labels' greed. The Labels have already received all the compensation they deserve for any use of their music in the DBI Entities' posts. The Labels are trying to leverage the copyright laws of the United States for an improper purpose: to get monies from the DBI Entities to which they are not entitled. But the Labels' threatened copyright infringement lawsuits are barred under the doctrines of estoppel, license, copyright misuse, and the other defenses set forth below. The DBI Entities will not continue to allow the Labels to threaten it or its subsidiaries or affiliates with baseless copyright allegations to extract settlement

4

payments or cast a shadow over their business. The DBI Entities file this declaratory judgment action to expose the Labels' improper conduct, clear their names, and resolve the Labels' improper allegations of copyright infringement in their favor.

## THE PARTIES

9. Plaintiff DBI is an Ohio corporation with its principal place of business in Columbus, Ohio.

10. DBI is publicly traded and owns and operates various subsidiaries that sell shoes and other goods, including DSW and Topo. DBI is a holding company. Nonetheless, the Labels have accused DBI of copyright infringement, so DBI joins in this action as a plaintiff.

11. Plaintiff DSW is a Missouri corporation with its principal place of business in Columbus, Ohio.

12. Plaintiff Topo is a Delaware limited liability company with a place of business in Columbus, Ohio.

13. On information and belief, Defendant Sony Music Entertainment ("SME") is a Delaware general partnership with its principal place of business in New York, New York.

14. On information and belief, Defendant Sony Music Publishing (US) LLC ("SMP") is a Delaware limited liability company with its principal place of business in New York, New York.

15. On information and belief, Defendant UMG Recordings, Inc. ("UMG") is a Delaware corporation with its principal place of business at 2220 Colorado Avenue, Santa Monica, California 90404.

16. On information and belief, Defendant Universal Music Group Publishing, Inc. ("UMGP") is a Delaware corporation with its principal place of business at 2105 Colorado

Avenue, Santa Monica, California 90404.

17.     On information and belief, Defendant BMG Rights Management (US) LLC ("BMG") is a Delaware limited liability corporation with its principal place of business at One Park Avenue, 18th Floor, New York, New York 1001.

## JURISDICTION, JOINDER AND VENUE

18.     This action arises under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. The Court has subject matter jurisdiction pursuant to at least 28 U.S.C. § 1331 as this action arises under the laws of the United States and seeks a declaration that DBI and its subsidiaries do not infringe any valid U.S. copyright under the Copyright Act.

19.     The Court has personal jurisdiction over each of the Labels in this action. As discussed below and throughout this Complaint, the Labels have directed their false assertions of copyright infringement toward the DBI Entities in Ohio and this District, demanded that the DBI Entities take action in Ohio and this District, and accused the DBI Entities of committing copyright infringement in Ohio and this District.

20.     Moreover, as alleged below, the Labels' purported cause of action for copyright infringement overlap with one another and the cause of action asserted in the *WMG* case, which is already pending in this District.

21.     DBI, DSW, and Topo are all named defendants in the *WMG* case, which is currently pending in this District. DBI, DSW, and Topo are each accused of copyright infringement by Warner Music Group and/or its affiliates and subsidiaries in the *WMG* case, including, on information and belief, on songs in which the Labels in this case claim to own some or all of the asserted copyright.

6

22.     For example, SMP has asserted to have whole or partial "control" over dozens of songs that form the basis for the cause of action asserted by the DBI Entities in the *WMG* case. *Compare* Ex. 1 at 3-10 *with WMG* Case, Dkt. 1-1 (Schedule A to the original Complaint) and Dkt. 19-1 (Schedule A to the Amended Complaint).

23.     Similarly, UMG and UMPG have alleged that "[m]any, if not all, of the sound recordings" that are the basis for the cause of action asserted in the *WMG* case "embody musical compositions owned and/or controlled in whole or part by UMPG." Ex. 2 at 1.

24.     SME and BMG have not yet identified a list of sound recordings or compositions that are the grounds for their alleged cause of action against the DBI Entities. The manner in which rights to copyrights are distributed in the music industry, however, makes it virtually certain that the song recordings and/or compositions that are the basis for SME's and BMG's purported cause of action against the DBI Entities at least partially overlap the sound recordings and/or compositions that are also owned, in whole or part, by the other the Labels in this lawsuit as well as one or more plaintiffs in the *WMG* case.

25.     The overlap in the Labels' cause of action in this action and the plaintiffs in the *WMG* case that they own copyrights in the same musical recording(s) and composition(s) provide a proper basis to join all of the Labels in this action. On information and belief, the Labels are seeking to assert the same cause of action based on the same alleged predicate acts and the same copyrights against the DBI Entities.

26.     The overlap between the copyrights and cause of action that form the basis for this action further overlap with the copyrights and cause of action in the *WMG* case, making it proper to join and consolidate this action with the *WMG* case. The DBI Entities intend to file such a motion at the appropriate time.

27. On information and belief, the Labels also regularly transact business in Ohio through selling and distributing, and/or facilitating the sale and distribution of, the songs and musical compositions in which they claim to own copyrights. It is proper for the Court to exercise personal jurisdiction over each Defendant for this reason as well.

28. For at least the foregoing reasons, and the additional facts set forth below, venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this cause of action arose in this District. Moreover, although not applicable to this declaratory judgment action, were the Labels to follow through on their threats and file complaints for copyright infringement against the DBI Entities, this District is a proper venue for this cause of action under 28 U.S.C. § 1400(a) as it is where the DBI Entities reside or may be found.

## FACTS

29. DSW and Topo advertise their products through a variety of channels, including posts on social media accounts associated with their brands. These social media accounts are on various well-known social media platforms, including Instagram and TikTok.

30. Instagram, TikTok, and other social media platforms make music available to their users, such as DSW, for use as the audio to accompany posts on their platforms. These musical recordings are typically not full songs but snippets or partial samples of songs that users of Instagram and TikTok can add to their posts prior to the posts becoming public. These samples are added by users of Instagram and TikTok into a post that they generate with other visual and audio content, and then the post is published on the social media platform.

31. DSW and Topo follow Instagram's and TikTok's Terms of Service and their standard posting procedures in accordance with Instagram's and TikTok's policies when creating posts on the social media accounts associated with their brands. DSW and Topo use the music snippets and samples offered by Instagram and TikTok in creating their posts. DSW and Topo

create a unique post with visual or audio-visional content and then, after uploading the post, sometimes incorporate a snippet of music that is offered by the social media platform prior to publishing the post on the platform.

32. As stated above, DBI is a holding company. It makes and publishes no posts on any platform, including Instagram and TikTok.

33. The Terms of Service provided by Instagram and TikTok state that users can include music samples from Instagram's and TikTok's libraries when creating posts on user accounts. Importantly, these Terms of Service do not distinguish between user accounts associated with individuals, businesses, or other groups or entities when discussing the incorporation of music into a post. These Terms of Service also indicate that the rights for users to incorporate music in their posts are based on one or more licenses between the platform and the relevant rights holder(s). For example, Instagram's Terms of Service state the following in relevant part with regard to the incorporation of music in posts with "videos":

> Our partnerships with rights holders have brought people together around music on our platforms. As part of our licensing agreements, there are limitations around the amount of recorded music that can be included in Live broadcasts or videos. While the specifics of our licensing agreements are confidential, today we're sharing some general guidelines to help you plan your videos better:
>
> - Music in stories and traditional live music performances (e.g., filming an artist or band performing live) are permitted.
> - The greater the number of full-length recorded tracks in a video, the more likely it may be limited (more below on what we mean by "limited").
> - For that reason, shorter clips of music are recommended.
> - There should always be a visual component to your video; recorded audio should not be the primary purpose of the video.
>
> These guidelines are consistent across live and recorded video on both Facebook and Instagram, and for all types of accounts – i.e. pages, profiles, verified and unverified accounts. And although music is launched on our platforms in more than 90 countries, there

9

are places where it is not yet available. So if your video includes recorded music, it may not be available for use in those locations.[1]

34.    Similarly, TikTok's Terms of Service state that users may incorporate music provided by TikTok into their posts. TikTok's Terms of Service also do not distinguish between user accounts associated with individuals, businesses, or other groups or entities when discussing the incorporation of music into a post. For example:

> Users of the Services may also overlay music, graphics, stickers, Virtual Items (as defined and further explained Virtual Items Policy) and other elements provided by TikTok ("TikTok Elements") onto this User Content and transmit this User Content through the Services.[2]

35.    Moreover, although Instagram and TikTok's Terms of Service do contain certain terms warning about uploading music, creating playlists, and uploaded or user-supplied music, none of these additional terms limit or rescind the ability of users to incorporate music provided by Instagram and TikTok into a post.

36.    Instagram, TikTok, and other social media platforms permit users to incorporate music into their posts because, on information and belief, they have entered into license agreements with rights holders that permit such uses. For example, Instagram's Terms of Service alludes to these license agreements and refers to Instagram's "partnerships with rights holders" to permit users to incorporate music into their posts.[3] Moreover, TikTok has advertised entering into agreements with rights holders to permit music to be incorporated into posts on its platform.[4]

---

[1] https://about.instagram.com/blog/announcements/updates-and-guidelines-for-including-music-in-video (last visited July 3, 2025).
[2] https://www.tiktok.com/legal/page/us/terms-of-service/en (last visited July 3, 2025).
[3] https://about.instagram.com/blog/announcements/updates-and-guidelines-for-including-music-in-video (last visited July 3, 2025).
[4] https://newsroom.tiktok.com/en-gb/tiktok-and-universal-music-group-announce-expanded-global-alliance-uk (last visited July 4, 2025); https://newsroom.tiktok.com/en-us/tiktok-announces-agreement-with-sony-music-entertainment (last visited July 4, 2025).

37.     The Labels have also promoted and advertised that they have entered into license agreements with social media platforms. For example, Defendants UMG and UMPG have published at least two press releases dated December 21, 2017 and August 12, 2024 touting their partnership with Instagram's parent companies to permit its music to be shared by users on Instagram. They issued two more press releases dated February 8, 2021 and May 1, 2024 touting a similar partnership with TikTok. All of these press releases encourage users to include music in which UMG and/or UMPG claims rights in posts on their user accounts on the applicable platforms. Their February 8, 2021 press release concerning TikTok is exemplary, and states the following in relevant part:

> **LOS ANGELES, February 8, 2021** — Universal Music Group (UMG), the world leader in music-based entertainment, and TikTok, the short-form video app with a mission to inspire creativity and bring joy, today announced a global agreement that delivers equitable compensation for recording artists and songwriters and significantly expands and enhances the companies' existing relationship, promoting the development of new innovative experiences and the ability to forge deeper bonds between fans and the artists and music they love.
>
> With this agreement, which covers recorded music from artists at UMG's labels and songwriters with Universal Music Publishing Group (UMPG), TikTok users will be more empowered than ever to express themselves through music, soundtrack their video creations with songs about which they are passionate and build communities around artists and music-centered culture. The companies have additionally pledged to experiment with exciting new features. TikTok users will now be able to incorporate clips from UMG's full catalog of music, spanning the company's iconic labels, songwriters and global territories.[5]

38.     None of these press releases distinguish between user accounts associated with individuals, businesses, or other groups or entities when discussing the incorporation of music into

---

[5] https://www.universalmusic.com/tiktok-and-universal-music-group-announce-expanded-global-alliance/ (last visited July 3, 2025).

a post. The press releases instead state, *e.g.*, "TikTok users will now be able to incorporate clips from UMG's full catalog of music, spanning the company's iconic labels, songwriters and global territories." *Id.* DSW and Topo are "TikTok users" when they post content on their TikTok accounts, including content that incorporates music in UMG's catalog.

39. Defendant SMP has similarly issued a press release on January 8, 2018 touting its relationship with Instagram's parent company and encouraging users to include its music in their Instagram posts. Once again, SMP did not distinguish between user accounts associated with individuals, businesses, or other groups or entities when discussing the incorporation of music into a post. SMP's press release states, in relevant part:

> The multi-territory, multi-year deal is the first between the world's leading music publishing company, which oversees a catalog of more than 3 million songs, and Facebook, which has more than 2 billion monthly active users. It provides Sony/ATV's songwriters with a unique opportunity to earn royalties from the use of their music on both Facebook and Instagram.
>
> Sony/ATV's contemporary roster includes The Chainsmokers, Drake, Pink, Ed Sheeran, Sia, Sam Smith, Taylor Swift, Kanye West and Pharrell Williams, while it also represents the songs of legends such as The Beatles, Leonard Cohen, Bob Dylan, Michael Jackson, Carole King and Queen, the Jobete catalog of Motown songs and standards including "Over The Rainbow," "Moon River" and "Singin' In The Rain".
>
> Under the agreement, users will be able to upload and share videos on Facebook, Instagram and Oculus that contain compositions licensed from Sony/ATV's catalog as well as personalize their music experiences with songs from the catalog.[6]

40. Once again, DSW and Topo are "users" of Instagram when they post to their Instagram accounts, including for posts that incorporate music from SMP's catalog. Indeed, on information and belief, the "more than 2 billion monthly active users" promoted by SMP in its

---

[6] https://www.sonymusicpub.com/en/news/1760/sony/atv-and-facebook-sign-ground-breaking-agreement (last visited July 4, 2025).

press release include business and corporate users and accounts. SMP is specifically encouraging users like DSW and Topo to make posts that incorporate its music.

41.     The foregoing are simply examples of the Labels encouraging users like DSW and Topo to incorporate their music in their Instagram and TikTok posts and assuring users (including DSW and Topo) that all such posts are proper and licensed. Indeed, on information and belief, all the Labels have entered into license agreements with social media platforms such as Instagram and TikTok. On information and belief, all the Labels know of, encourage, and permit users of those platforms to incorporate their music into posts on those accounts.

42.     At no time did the Labels publicly distinguish between user accounts associated with individuals, businesses, or other groups or entities when discussing when their music can be used in a post in their press releases.

43.     The Labels knew or reasonably should have known that Instagram, TikTok and other social media platforms permitted users to add their music to posts on their social media accounts. The Labels also knew that the public Terms of Service did not distinguish between accounts associated with individuals, businesses, or other groups or entities when permitting music to be added to their accounts. The Labels remained deliberately silent in the face of these Terms of Service because they benefited financially from posts incorporating music in which they purport to claim rights, including DSW's and Topo's posts.

44.     The Labels also knew or reasonably should have known that the processes by which Instagram, TikTok, and other social media platforms permitted users to add music to posts on their respective platforms indicated that such incorporation was authorized by the relevant rights holder. The Labels at no time took steps to indicate to the DBI Entities that incorporating their music into a social media post was not authorized or otherwise might constitute copyright infringement prior

to sending their unjustified demand letters to the DBI Entities. The Labels remained deliberately silent because they benefited financially from posts incorporating music in which they purport to claim rights, including DSW's and Topo's posts.

45. Even notwithstanding the Labels' public pronouncements and conduct encouraging DSW and Topo to use their music in their social media posts, DSW's and Topo's uses of the Labels' music on its social media posts are lawful and proper for additional reasons. For example, on information and belief, the Labels' *own* posts on TikTok, Instagram, and other social media accounts, and/or posts by other rights holders, have independently granted DSW the right to use the Labels' music in the accused posts.

46. On information or belief, the Labels and/or other rights holders maintain accounts on TikTok, Instagram, and other social media accounts. Those accounts are bound by the same Terms of Service that govern DSW's social media accounts.

47. By posting their music on TikTok, Instagram and other social media accounts, the Labels grant the relevant platform broad license rights to publish and distribute the music under the applicable Terms of Service, including to permit other users on the social media account to re-use and re-purpose music from other user posts. For example, TikTok's Terms of Service state as follows:

> Users of the Services may be permitted to upload, post or transmit (such as via a stream) or otherwise make available content through the Services including, without limitation, any text, photographs, user videos, sound recordings and the musical works embodied therein, including videos that incorporate locally stored sound recordings from your personal music library and ambient noise ("User Content"). Users of the Services may also extract all or any portion of User Content created by another user to produce additional User Content, including collaborative User Content with other users, that combine and intersperse User Content generated by

more than one user.[7]

48. Instagram and other social media platforms have similar terms of service allowing users to replicate, incorporate, and distribute content from other users of the platform. On information and belief, this includes music from the Labels, either via the Labels' accounts or via the accounts of other rights holders. And, once again, these Terms of Service do not distinguish between user accounts associated with individuals, businesses, or other groups or entities when authorizing the incorporation of music into a post.

49. On information and belief, the Labels or other rights holders have uploaded, published, or incorporated music in posts on user accounts on Instagram, TikTok, and other social media platforms. On information and belief, these posts include music that is the basis for Defendant's purported cause of action. The Terms of Service of the social media platforms make that music freely available for use by DSW and Topo on the relevant social media platform, including to incorporate in Plaintiffs' own posts on the same platform.

50. The Labels knew or reasonably should have known that the Terms of Service applicable to their own posts on Instagram, TikTok, and other social media platforms authorized DSW and Topo to incorporate their music into their posts on at least the same platform.

51. On information and belief, the Labels have also been paid for use of their music on Instagram, TikTok and other social media platforms. Yet the Labels demand to be paid again by the DBI Entities.

52. Moreover, on information and belief, the Labels are seeking recovery based on social media posts made outside the United States and directed to persons outside of the United States. For example, at least SMP, UMG, and UMPG have accused posts made by a Canadian

---

[7] https://www.tiktok.com/legal/page/us/terms-of-service/en (last visited July 3, 2025).

company in Canada and directed to Canadian users of infringing their U.S. copyrights. Subject matter that is outside of the United States and directed to persons outside the United States is not covered by U.S. copyright law. It cannot be a basis for a legitimate cause of action for copyright infringement in the United States, and the Labels are engaged in copyright misuse for at least this reason (among others).

53. The Labels, through their speech and conduct, as well as by their misleading silence in the face of the foregoing known policies and practices of social media platforms such as Instagram and TikTok, actively encouraged users, including DSW and Topo, to incorporate their music into posts on user accounts. The Labels encouraged users like DSW and Topo to post the Labels' music on their accounts because those posts made the Labels money. Not only do DSW's and Topo's posts provide free publicity for the Labels and advertise their artists but, on information and belief, the social media platforms are making substantial payments to the Labels so that users like DSW and Topo can incorporate the Labels' music in posts on the platform.

54. The Labels reasonably expected DSW and Topo to rely upon their misleading statements, conduct, and silence.

55. DSW and Topo in fact relied upon the Labels' misleading statements, conduct, and silence in creating and publishing the posts that the Labels now claim to constitute copyright infringement. DSW and Topo also relied upon the Terms of Service of the social media platforms on which they have accounts, including TikTok's and Instagram's Terms of Service, and on the Labels' misleading silence in the face of those Terms of Service. The Labels knew that DSW and Topo would rely on their misleading statements, conduct, and silence and profited from the very purported acts of copyright infringement of which they now complain.

56. Simply put, the Labels have encouraged, licensed, and allowed the very conduct

about which they now complain. Their threats against the DBI Entities are an unlawful attempt to extend their copyrights in music for which they have already been paid beyond the limits of U.S. law and are contrary to public policy.

## COUNT I: DECLARATION THAT PLAINTIFFS DO NOT INFRINGE ANY VALID COPYRIGHT OF DEFENDANT SONY MUSIC ENTERTAINMENT

57. Plaintiffs repeat and re-allege Paragraphs 1-56 as though fully set forth herein.

58. There exists an actual and judiciable controversy of sufficient immediacy to warrant the issuance of declaratory relief. Among other things, Defendant SME has accused Plaintiffs and/or their subsidiaries and affiliates of copyright infringement and demanded that they cease and desist from taking certain actions in the ordinary course of their business(es).

59. Defendant SME has no basis to assert that Plaintiffs have violated its copyrights under one or more of the doctrines of estoppel and implied license, and/or because Plaintiffs' purportedly infringing posts are covered by one or more license agreements with Instagram, TikTok, and other social media platforms and/or because Plaintiffs are third party beneficiaries to such license agreements. Defendant SME is also engaged in conduct that violates the public policies underlying U.S. copyright law, and the copyrights SME seeks to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of SME's own unclean hands.

60. Plaintiffs believe that additional grounds exist that preclude any legitimate cause of action for copyright infringement by Defendant SME against Plaintiffs. Plaintiffs reserve the right to assert additional defenses in the future, including in reply to any counterclaims for copyright infringement asserted by the Labels with their Answers to this Complaint as well as via future amendments to this pleading.

61. For at least the reasons set forth above, however, Plaintiffs and/or their subsidiaries

and affiliates have not and are not infringing any valid copyrights wholly or partially owned by Defendant SME.

62. Plaintiffs and their subsidiaries and affiliates are entitled to a declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any valid copyrights owned by Defendant SME.

63. Moreover, insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by Defendant SME, Plaintiffs and/or their subsidiaries and affiliates are entitled to a set off or accounting of any award of damages against them based on the ownership interests in such copyrights that may be held by one or more other Labels in this lawsuit or one or more of the Plaintiffs in the *WMG* case.

## COUNT II: DECLARATION THAT PLAINTIFFS DO NOT INFRINGE ANY VALID COPYRIGHT OF DEFENDANT SONY MUSIC PUBLISHING (US) LLC

64. Plaintiffs repeat and re-allege Paragraphs 1-56 as though fully set forth herein.

65. There exists an actual and judiciable controversy of sufficient immediacy to warrant the issuance of declaratory relief. Among other things, Defendant SMP has accused Plaintiffs and/or their subsidiaries and affiliates of copyright infringement and demanded that they cease and desist from taking certain actions in the ordinary course of their business(es).

66. Defendant SMP has no basis to assert that Plaintiffs have violated its copyrights under one or more of the doctrines of estoppel and implied license, and/or because Plaintiffs' purportedly infringing posts are covered by one or more license agreements with Instagram, TikTok, and other social media platforms and/or because Plaintiffs are third party beneficiaries to such license agreements. Defendant SMP is also engaged in conduct that violates the public policies underlying U.S. copyright law, and the copyrights SMP seeks to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of SMP's own unclean

hands.

67.     Plaintiffs believe that additional grounds exist that preclude any legitimate cause of action for copyright infringement by Defendant SMP against Plaintiffs. Plaintiffs reserve the right to assert additional defenses in the future, including in reply to any counterclaims for copyright infringement asserted by the Labels with their Answers to this Complaint as well as via future amendments to this pleading.

68.     For at least the reasons set forth above, however, Plaintiffs and their subsidiaries and affiliates have not and are not infringing any valid copyrights wholly or partially owned by Defendant SMP.

69.     Plaintiffs and their subsidiaries and affiliates are entitled to a declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any valid copyrights owned by Defendant SMP.

70.     Moreover, insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by Defendant SMP, Plaintiffs and/or their subsidiaries and affiliates are entitled to a set off or accounting of any award of damages against them based on the ownership interests in such copyrights that may be held by one or more other Labels in this lawsuit or one or more of the Plaintiffs in the *WMG* case.

**COUNT III: DECLARATION THAT PLAINTIFFS DO NOT INFRINGE ANY VALID COPYRIGHT OF DEFENDANT UNIVERSAL MUSIC GROUP**

71.     Plaintiffs repeat and re-allege Paragraphs 1-56 as though fully set forth herein.

72.     There exists an actual and judiciable controversy of sufficient immediacy to warrant the issuance of declaratory relief. Among other things, Defendant UMG has accused Plaintiffs and/or their subsidiaries and affiliates of copyright infringement and demanded that they cease and desist from taking certain actions in the ordinary course of their business(es).

73. Defendant UMG has no basis to assert that Plaintiffs have violated its copyrights under one or more of the doctrines of estoppel and implied license, and/or because Plaintiffs' purportedly infringing posts are covered by one or more license agreements with Instagram, TikTok, and other social media platforms and/or because Plaintiffs are third party beneficiaries to such license agreements. Defendant UMG is also engaged in conduct that violates the public policies underlying U.S. copyright law, and the copyrights UMG seeks to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of UMG's own unclean hands.

74. Plaintiffs believe that additional grounds exist that preclude any legitimate cause of action for copyright infringement by Defendant UMG against Plaintiffs. Plaintiffs reserve the right to assert additional defenses in the future, including in reply to any counterclaims for copyright infringement asserted by the Labels with their Answers to this Complaint as well as via future amendments to this pleading.

75. For at least the reasons set forth above, however, Plaintiffs and their subsidiaries and affiliates have not and are not infringing any valid copyrights wholly or partially owned by Defendant UMG.

76. Plaintiffs and their subsidiaries and affiliates are entitled to a declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any valid copyrights owned by Defendant UMG.

77. Moreover, insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by Defendant UMG, Plaintiffs and/or their subsidiaries and affiliates are entitled to a set off or accounting of any award of damages against them based on the ownership interests in such copyrights that may be held by one

or more other Labels in this lawsuit or one or more of the Plaintiffs in the *WMG* case.

**COUNT IV: DECLARATION THAT PLAINTIFFS DO NOT INFRINGE ANY VALID COPYRIGHT OF DEFENDANT UNIVERSAL MUSIC PUBLISHING GROUP, INC.**

78.     Plaintiffs repeat and re-allege Paragraphs 1-56 as though fully set forth herein.

79.     There exists an actual and judiciable controversy of sufficient immediacy to warrant the issuance of declaratory relief. Among other things, Defendant UMPG has accused Plaintiffs and/or their subsidiaries and affiliates of copyright infringement and demanded that they cease and desist from taking certain actions in the ordinary course of their business(es).

80.     Defendant UMPG has no basis to assert that Plaintiffs have violated its copyrights under one or more of the doctrines of estoppel and implied license, and/or because Plaintiffs' purportedly infringing posts are covered by one or more license agreements with Instagram, TikTok, and other social media platforms and/or because Plaintiffs are third party beneficiaries to such license agreements. Defendant UMPG is also engaged in conduct that violates the public policies underlying U.S. copyright law, and the copyrights UMPG seeks to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of UMPG's own unclean hands.

81.     Plaintiffs believe that additional grounds exist that preclude any legitimate cause of action for copyright infringement by Defendant UMPG against Plaintiffs. Plaintiffs reserve the right to assert additional defenses in the future, including in reply to any counterclaims for copyright infringement asserted by the Labels with their Answers to this Complaint as well as via future amendments to this pleading.

82.     For at least the reasons set forth above, however, Plaintiffs and their subsidiaries and affiliates have not and are not infringing any valid copyrights wholly or partially owned by Defendant UMPG.

83.     Plaintiffs and their subsidiaries and affiliates are entitled to a declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any valid copyrights owned by Defendant UMPG.

84.     Moreover, insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by Defendant UMPG, Plaintiffs and/or their subsidiaries and affiliates are entitled to a set off or accounting of any award of damages against them based on the ownership interests in such copyrights that may be held by one or more other Labels in this lawsuit or one or more of the Plaintiffs in the *WMG* case.

## COUNT V: DECLARATION THAT PLAINTIFFS DO NOT INFRINGE ANY VALID COPYRIGHT OF DEFENDANT BMG RIGHTS MANAGEMENT (US) LLC

85.     Plaintiffs repeat and re-allege Paragraphs 1-56 as though fully set forth herein.

86.     There exists an actual and judiciable controversy of sufficient immediacy to warrant the issuance of declaratory relief. Among other things, Defendant BMG has accused Plaintiffs and/or their subsidiaries and affiliates of copyright infringement and demanded that they cease and desist from taking certain actions in the ordinary course of their business(es).

87.     Defendant BMG has no basis to assert that Plaintiffs have violated its copyrights under one or more of the doctrines of estoppel and implied license, and/or because Plaintiffs' purportedly infringing posts are covered by one or more license agreements with Instagram, TikTok, and other social media platforms and/or because Plaintiffs are third party beneficiaries to such license agreements. Defendant BMG is also engaged in conduct that violates the public policies underlying U.S. copyright law, and the copyrights BMG seeks to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of BMG's own unclean hands.

88.     Plaintiffs believe that additional grounds exist that preclude any legitimate cause of

action for copyright infringement by Defendant BMG against Plaintiffs. Plaintiffs reserve the right to assert additional defenses in the future, including in reply to any counterclaims for copyright infringement asserted by the Labels with their Answers to this Complaint as well as via future amendments to this pleading.

89.     For at least the reasons set forth above, however, Plaintiffs and their subsidiaries and affiliates have not and are not infringing any valid copyrights wholly or partially owned by Defendant BMG.

90.     Plaintiffs and their subsidiaries and affiliates are entitled to a declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any valid copyrights owned by Defendant BMG.

91.     Moreover, insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by Defendant BMG, Plaintiffs and/or their subsidiaries and affiliates are entitled to a set off or accounting of any award of damages against them based on the ownership interests in such copyrights that may be held by one or more other Labels in this lawsuit or one or more of the plaintiffs in the *WMG* case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter an order awarding them:

a.      An Order declaring that Plaintiffs and their subsidiaries and affiliates do not infringe, have not infringed, and are not liable for any infringement(s) of any valid copyright owned by Defendants (in whole or part);

b.      An Order awarding Plaintiffs all attorneys' fees and reasonable expenses incurred in prosecuting this action and defending any counterclaims;

c.      An Order awarding Plaintiffs all costs incurred in prosecuting this action and defending any counterclaims;

d.      Insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by any one or more of Defendants, an Order setting off and an accounting for any damages award to account for the ownership interests held by any other Defendant in this lawsuit, one or more of the Plaintiffs in the *WMG* case, and/or any other rights holder, such that the any award against Plaintiffs and/or their subsidiaries and affiliates comport with the law; and,

e.      All such other relief as this Court deems just, proper, or necessary.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

July 9, 2025                                    Respectfully submitted,

**BARNES & THORNBURG LLP**

By: */s/ David M. DeVillers*
David M. DeVillers (0059456), Trial Counsel
Kristopher J. Armstrong (0077799), Co-Counsel
41 S. High Street, Suite 3300
Columbus, Ohio 43215
Tel: (614) 628-0096
Fax: (614) 628-1433
e-mail: ddevillers@btlaw.com
e-mail: kristopher.argmstrong@btlaw.com

-and-

Jeff M. Barron (*pro hac vice* forthcoming)
BARNES & THORNBURG LLP
11 South Meridian Street Indianapolis,
IN 46204
Tel: (317) 231-7735
Fax: (317) 231-7433
e-mail: jeff.barron@btlaw.com

***Counsel for Plaintiffs Designer Brands Inc., DSW Shoe Warehouse, Inc., and Topo Athletic LLC***

24