**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **DESIGNER BRANDS INC.,** *ET AL.*, | **Case No. 2:25-cv-00765** |
| *Plaintiffs,* | **Judge Michael H. Watson** |
| **v.** | **Magistrate Elizabeth A. Preston Deavers** |
| **SONY MUSIC ENTERTAINMENT,** *ET AL.*, | **Oral Argument Requested** |
| *Defendants.* | |

**DEFENDANT SONY MUSIC ENTERTAINMENT'S
<u>MOTION TO DISMISS AND FOR A STAY OF DISCOVERY</u>**

Upon the accompanying Memorandum of Law, Declaration of David Jacoby, Declaration of Avery D. Medjuck, and all the pleadings and papers on file in this case, Defendant Sony Music Entertainment ("SME") respectfully moves to dismiss Plaintiffs Designer Brands Inc., DSW Shoe Warehouse, Inc. and Topo Athletic LLC's declaratory judgment complaint against it pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(2), Fed R. Civ. P 12(b)(6), and/or pursuant to the Court's discretion to decline jurisdiction over an improper anticipatory declaratory judgment action. SME also moves for a stay of discovery pending the Court's decision on the instant Motion.


Dated: October 20, 2025                    Respectfully submitted,

/s/ Shawn J. Organ
Shawn J. Organ, Esq. (0042052)
*Trial Attorney*
Connor A. Organ, Esq. (0097995)
**Organ Law LLP**
1330 Dublin Road
Columbus, OH 43215
P: 614-481-0900
F: 614-481-0904
sjorgan@organlegal.com
corgan@organlegal.com

Cynthia S. Arato, Esq. (*pro hac vice*)
Avery D. Medjuck, Esq. (*pro hac vice*)
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
212-257-4880
carato@shapiroarato.com
amedjuck@shapiroarato.com

*Attorneys for Defendant*
*Sony Music Entertainment*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **DESIGNER BRANDS INC.,** *ET AL.*, | **Case No. 2:25-cv-00765** |
| *Plaintiffs,* | |
| | **Judge Michael H. Watson** |
| **v.** | |
| | **Magistrate Elizabeth A. Preston** |
| **SONY MUSIC ENTERTAINMENT,** *ET AL.*, | **Deavers** |
| *Defendants.* | |

**DEFENDANT SONY MUSIC ENTERTAINMENT'S MEMORANDUM OF LAW IN**
**SUPPORT OF ITS MOTION TO DISMISS AND FOR A STAY OF DISCOVERY**

ORGAN LAW LLP

Shawn J. Organ, Esq. (0042052)
*Trial Attorney*
Connor A. Organ, Esq. (0097995)
1330 Dublin Road
Columbus, OH 43215
P: 614-481-0900
F: 614-481-0904
sjorgan@organlegal.com
corgan@organlegal.com

SHAPIRO ARATO BACH LLP

Cynthia S. Arato, Esq. (*pro hac vice*)
Avery D. Medjuck, Esq. (*pro hac vice*)
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
212-257-4880
carato@shapiroarato.com
amedjuck@shapiroarato.com

*Attorneys for Defendant Sony Music*
*Entertainment*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .............................................................................................. 1

THE DSW PLAINTIFFS' ANTICIPATORY FILING ..................................... 3

THE ALLEGATIONS OF THE ANTICIPATORY COMPLAINT .................. 6

ARGUMENT ...................................................................................................... 8

I. THE DSW PLAINTIFFS CANNOT CARRY THEIR BURDEN TO
ESTABLISH PERSONAL JURISDICTION OVER SME ............................ 8

    A. SME Is Not Subject to General Jurisdiction ................................. 8

    B. SME Is Not Subject to Specific Jurisdiction ................................. 9

        1. SME's Pre-Suit Settlement Correspondence with the DSW
Plaintiffs Is Insufficient to Confer Personal Jurisdiction Over
SME .................................................................................. 9

        2. The Allegation that SME Transacts Business in Ohio Related
to the Copyrights at Issue Is Insufficient for Jurisdiction Over
SME .................................................................................. 11

II. THE COMPLAINT SHOULD BE DISMISSED AS AN IMPROPER
ANTICIPATORY ACTION ...................................................................... 12

    A. The First-To-File Rule Does Not Apply to This Declaratory Judgment
Action ............................................................................... 12

    B. The *Grand Trunks* Factors Also Favor Dismissal ....................... 15

III. THE DSW PLAINTIFFS' FAILURE TO PLEAD THE ALLEGEDLY NON-
INFRINGING ADVERTISEMENTS OR THE COPYRIGHTED WORKS
MANDATES DISMISSAL UNDER RULES 12(b)(1) AND 12(b)(6) ........... 16

    A. The DSW Plaintiffs' Failure to Identify the Social Media
Advertisements at Issue Mandates Dismissal ............................. 17

    B. The DSW Plaintiffs Impermissibly Ask the Court for an Advisory
Opinion by Failing to Identify the SME Copyrights at Issue ....... 18

IV. THE COURT SHOULD STAY DISCOVERY PENDING RESOLUTION OF
THE INSTANT MOTION ........................................................................ 19

CONCLUSION .................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                       **Page(s)**

*AmSouth Bank v. Dale*,
   386 F.3d 763 (6th Cir. 2004) ....................................................................... 13, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 16, 19

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F.3d 1324 (Fed. Cir. 2008) .......................................................................... 10

*Begum v. U.S. Dep't of State*,
   2024 WL 4871599 (S.D. Ohio Nov. 22, 2024) ................................................... 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 16, 19

*Bergeron v. Oakland Cty.*,
   2024 WL 4982890 (E.D. Mich. Dec. 4, 2024) .................................................... 16

*Bird v. Parsons*,
   289 F.3d 865 (6th Cir. 2002) ............................................................................... 8

*Bridgeport Music, Inc. v. Still N The Water Publ'g*,
   327 F.3d 472 (6th Cir. 2003) ............................................................................... 8

*Bridgeport Music, Inc. v. TufAmerica, Inc.*,
   2019 WL 3310866 (E.D. Mich. Feb. 20, 2019) ............................................. 10, 12

*Calphalon Corp. v. Rowlette*,
   228 F.3d 718 (6th Cir. 2000) ............................................................................... 9

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
   511 F.3d 535 (6th Cir. 2007) ............................................................................. 13

*Coeus Creative Grp., LLC v. Gaffney*,
   2023 WL 5673950 (E.D. Mich. Sept. 1, 2023) ................................................... 10

*CompuServe, Inc. v. Patterson*,
   89 F.3d 1257 (6th Cir. 1996) ............................................................................... 8

*Cyr v. Real Value Prods., LLC*,
   2022 WL 7045559 (E.D. Mich. Oct. 12, 2022) .................................................. 12

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ........................................................................................... 8

*Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*,
  349 F.3d 300 (6th Cir. 2003) ........................................................................... 19, 20

*Gilbert v. Ferry*,
  401 F.3d 411 (6th Cir. 2005) ................................................................................. 20

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*,
  746 F.2d 323 (6th Cir. 1984) ................................................................................. 15

*Great Am. Ins. Co. v. Johnson Controls, Inc.*,
  2020 WL 6073764 (S.D. Ohio Oct. 15, 2020) ...................................................... 13

*Hahn v. Star Bank*,
  190 F.3d 708 (6th Cir. 1999) ................................................................................. 19

*Indus. Trade & Tech., LLC v. Stone Mart Corp.*,
  2011 WL 6256937 (S.D. Ohio Dec. 14, 2011) ....................................................... 9

*Int'l Union v. Dana Corp.*,
  1999 WL 33237054 (N.D. Ohio Dec. 6, 1999) ................................................. 13, 14

*Intera Corp. v. Henderson*,
  428 F.3d 605 (6th Cir. 2005) ................................................................................... 9

*J.M. Smucker Co. v. Promotion in Motion, Inc.*,
  420 F. Supp. 3d 646 (N.D. Ohio 2019) ........................................................ 10, 12, 14

*Lyons Indus. Inc. v. Am. Standard, Inc.*,
  993 F. Supp 609 (W.D. Mich 1997) ....................................................................... 13

*Nat'l Emblem Ins. Co. v. Washington*,
  482 F.2d 1346 (6th Cir. 1973) ............................................................................... 12

*Paragon Component Sys., LLC v. Qualtim, Inc.*,
  2025 WL 1397196 (E.D. Tenn. Mar. 6, 2025) ..................................................... 9, 11

*Parson v. Barney*,
  2023 WL 5447287 (D. Minn. Aug. 24, 2023) ........................................................ 17

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998) ........................................................................ 10, 11

*Saginaw Cty., v. STAT Emergency Med. Servs., Inc.*,
  946 F.3d 951 (6th Cir. 2020) ................................................................................. 17

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
  522 F. Supp. 2d 1265 (S.D. Cal. 2007) ............................................................. 18, 19

iii

*Victoria's Secret Stores Brand Mgmt., Inc. v. Bob's Stores LLC*,
  2014 WL 1045994 (S.D. Ohio Mar. 17, 2014) .................................................... 19, 20

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................................ 11

*Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC*,
  2017 WL 1386357 (S.D.N.Y. Apr. 17, 2017) .................................................... 18, 19

*Wistron Corp. v. Phillip M. Adams & Assocs., LLC*,
  2011 WL 1654466 (N.D. Cal. Apr. 28, 2011) ...................................................... 17

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
  2011 WL 3206686 (N.D. Cal. July 27, 2011) ...................................................... 17

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ............................................................................. 9, 11

*Zahara Ariel LLC v. Lionsgate Entm't Corp.*,
  2023 WL 4706188 (S.D. Ohio June 14, 2023) ...................................................... 8

**Rules**

Fed. R. Civ. P. 8 .................................................................................................... 3, 16, 19

Fed. R. Civ. P. 12 .................................................................................................. 3, 8, 16

## <u>INTRODUCTION</u>

This declaratory judgment case is a textbook example of an improper anticipatory filing which the Court should decline to entertain in its equitable discretion. The action also fails to state a claim or a justiciable case or controversy, and the Court lacks personal jurisdiction over Defendant Sony Music Entertainment ("SME").

SME is a record company that owns and/or controls the copyrights in some of the most iconic, recognizable, and valuable sound recordings ever created. Declaratory Plaintiff Designer Brands Inc. ("DBI") and its subsidiaries DSW Shoe Warehouse, Inc. ("DSW") and Topo Athletic LLC ("Topo," and, collectively, the "DSW Plaintiffs") are some of North America's largest designers, producers, and retailers of footwear and fashion accessories.

This dispute concerns the commercial use by the DSW Plaintiffs of SME's valuable copyrighted sound recordings in their social media advertisements, without obtaining licenses from SME or paying SME its customary fees. Throughout their infringements, the DSW Plaintiffs knew or recklessly disregarded the need to obtain licenses directly from SME, and to pay SME, to use SME's valuable sound recordings in their social media advertisements. Despite that knowledge, the DSW Plaintiffs pilfered SME's sound recordings on a massive scale to entice consumers to view their social media posts, without paying the customary price.

SME first contacted the DSW Plaintiffs in May 2025, seeking to amicably resolve this dispute out of court, and the DSW Plaintiffs professed to share SME's settlement goal. However, while the parties were discussing settlement mechanics, the DSW Plaintiffs were secretly drafting a complaint, which they filed with this Court just hours after the parties' discussions stalled and SME told the DSW Plaintiffs that SME "plans to move ahead with preparing a complaint."

This Court should not condone the DSW Plaintiffs' bad faith filing. The Court should instead dismiss this action in favor of SME's pending copyright infringement case against the DSW Plaintiffs in the United States District Court for the Central District of California ("C.D. Cal."), for the following reasons.

*First*, there is no personal jurisdiction over SME. There is no *general* jurisdiction because Ohio is neither SME's state of incorporation nor its principal place of business. SME is a Delaware partnership headquartered in New York. There is no *specific* jurisdiction because the DSW Plaintiffs have not alleged, and cannot allege, that their declaratory judgment claim arises out of or relates to activities SME purposefully directed at Ohio. The DSW Plaintiffs allege this Court has specific jurisdiction over SME because SME informed them of SME's infringement claims, sought a tolling agreement so the parties could potentially resolve this dispute, and attempted to engage in a settlement dialogue—all activities that are insufficient to support specific jurisdiction. Even where a declaratory judgment defendant sends a cease-and-desist letter into the forum state—something SME did not do—such action does not support the exercise of specific jurisdiction unless it is *coupled with other enforcement actions* directed to the forum state. SME is not alleged to have engaged in any enforcement action. Thus, the exercise of jurisdiction would not comport with due process.

*Second*, even if personal jurisdiction did exist, the Court still should decline to hear this declaratory judgment action as against SME, because SME, along with certain of its affiliates, has filed its own affirmative copyright claims against the DSW Plaintiffs in C.D. Cal., and the DSW Plaintiffs filed this action without warning mere *hours* after SME explained it would be preparing a complaint. The DSW Plaintiffs' instant Complaint is thus a textbook improper anticipatory action motivated by forum-shopping which the Court should not allow.

***Third***, the DSW Plaintiffs' barebones Complaint fails to state a claim against SME or to establish a "case or controversy" sufficient to confer federal subject matter jurisdiction. The DSW Plaintiffs seek a declaration of non-infringement but fail to plead a single copyrighted work they claim they did not infringe or identify which of their social media advertisements are allegedly non-infringing. The DSW Plaintiffs' vague, blunderbuss allegation that they "are not liable for *any* infringement(s) of *any* valid copyright owned by Defendants" fails to provide the fair notice required by Fed. R. Civ. P. 8(a), mandating dismissal under Rule 12(b)(6). For substantially the same reason, these allegations fail to establish an Article III case or controversy.

## THE DSW PLAINTIFFS' ANTICIPATORY FILING

This dispute arose on May 9, 2025, when SME first contacted the DSW Plaintiffs about SME's infringement claims. SME emailed a former outside counsel for DSW and asked to be put "in touch with counsel for DSW in connection with infringement claims" against DSW. (*See* Declaration of David Jacoby ("Jacoby Decl."), Ex. A). After being connected with retained counsel, SME sought to enter a tolling agreement (Jacoby Decl., Ex. B at 10)[1], and the parties spent the next few weeks negotiating a toll (*id.* at 2-10).

Throughout this process, SME told the DSW Plaintiffs it hoped to resolve this dispute without resorting to formal litigation, and the DSW Plaintiffs professed to share this goal. Other than requesting a toll, SME did not demand that the DSW Plaintiffs take any action in Ohio or elsewhere regarding the videos in dispute. While SME "reserve[d] all rights" in its initial May 9 outreach, it explained it wanted "to avoid litigation." (Jacoby Decl. Ex. A). On June 3, when discussing the requested toll, SME reiterated that "rather than file [a] lawsuit, SME would much

---

[1] Page citations refer to ECF PageID numbers except for *supra or infra* citations to pages within this memorandum.

rather see if this can be resolved out of court." (Jacoby Decl., Ex. B at 6). On June 11, the DSW Plaintiffs proposed "a settlement discussion schedule" including a proposed schedule for mediation. (Jacoby Decl., Ex. C at 4). On June 25, the DSW Plaintiffs told SME that "DSW would like to find a constructive procedure for [] settlement discussions" (Jacoby Decl., Ex. D at 4), and they proposed a mediation for "late August or September" (*id.* at 5).

The parties' settlement efforts, however, stalled because the DSW Plaintiffs introduced a new and unexpected component into the settlement dialogue. They did not want to mediate with SME alone and, instead, proposed a "group mediation" with other companies in the music industry who had asserted their own infringement claims against the DSW Plaintiffs, both informally and formally, regarding different musical works.[2] (*Id.* at 4). The DSW Plaintiffs also declined to execute the tolling agreement SME proposed and proposed their own modified agreement with problematic terms. (*Id.* at 2-3).

On July 9, at 3:50 pm EST, SME thus told the DSW Plaintiffs that SME "plans to move ahead with preparing a complaint" both because it was "not interested in an industry wide mediation" and considering the parties' stalemate on the requested tolling agreement. (*Id.* at 3). At 6:20 pm EST, the DSW Plaintiffs continued to invite a settlement dialogue, with its counsel explaining, "I continue to believe that a broad settlement discussion is the way to go here, and I will continue to work in that direction, irrespective of whether litigation starts." (*Id.* at 4). Roughly *thirty minutes later*, at 6:52 pm EST, the DSW Plaintiffs filed the instant action for declaratory relief. (Dkt. 1; *see also* Declaration of Avery D. Medjuck ("Medjuck Decl."), Ex. A).

---

[2] SME's co-defendants in this action raised their assertions informally. (Complaint ¶¶22-24). (Further citations to ¶XX refer to the DSW Plaintiff's Complaint in this action, Dkt. 1.) A different group of entities affiliated with the Warner Music Group sued the DSW Plaintiffs for copyright infringement in this Court. *See* Complaint, *Atlantic Recording Corp. v. Designer Brands Inc.*, No. 2:25-cv-00479-MHW-EPD (S.D. Ohio), Dkt. 1).

This timeline makes clear that the DSW Plaintiffs filed this action because they believed SME was going to file its own substantive complaint. Consistent with that motivation—to usurp SME's right to a forum of its choosing—the DSW Plaintiffs did nothing with this action for weeks. They did not even obtain summonses so they could serve SME, or any other defendant, with service of process.

SME and seven affiliated companies (the "C.D. Cal. Plaintiffs") filed their own copyright infringement action against the DSW Plaintiffs on August 6, 2025, in the Central District of California. *Sony Music Entm't v. Designer Brands Inc.*, No. 2:25-cv-07285-JC (C.D. Cal.), Dkt. 1). The C.D. Cal. Plaintiffs allege that the DSW Plaintiffs committed copyright infringement by creating, posting and/or distributing, without authorization, at least 170 social media advertisements to their social media accounts incorporating about 122 copyrighted sound recordings owned and/or controlled by the C.D. Cal. Plaintiffs. (*Id.* at ¶45). The C.D. Cal. Plaintiffs also allege that the DSW Plaintiffs committed contributory or vicarious infringement based, among other things, on their collaboration with social media "influencers" who posted additional infringing advertisements on social media (*id.* at ¶¶78-94), an issue the DSW Plaintiffs' Complaint does not address.

SME emailed the DSW Plaintiffs on August 7, attaching the C.D. Cal. Complaint and writing: "We understand the parties previously discussed commencing settlement discussions. SME is prepared to engage in those discussions with DSW and to refrain from serving its complaint, if DSW will continue to do the same with its complaint. In that setting, each side would preserve its arguments as to which of the two pending litigations should proceed and the status quo would be maintained." (Medjuck Decl., Ex. B). The DSW Plaintiffs did not respond. Instead, they obtained a summons from this Court on August 7 and served SME on August 8.

(*See* Dkts. 9, 10). The DSW Plaintiffs waited six more weeks before obtaining summons or serving SME's co-defendants. (*See* Dkts. 20-23).

## THE ALLEGATIONS OF THE ANTICIPATORY COMPLAINT

The DSW Plaintiffs' Complaint contains five identical claims for a declaratory judgment, seeking unspecified sweeping relief, in an undifferentiated manner, against SME and four other defendants. As relevant here, the Complaint alleges:

DBI "operates various subsidiaries", including Plaintiffs DSW and Topo, "that sell shoes and other goods". (¶10).[3] DSW and Topo used unspecified sound recordings and musical compositions owned by SME and its co-defendants (lumped together by the DSW Plaintiffs as the "Labels" (*e.g.*, ¶2)) to "advertise their products … on social media accounts" (¶29) by incorporating these works in their social media posts (¶3). The DSW Plaintiffs do not identify the copyrighted works they contend they did not infringe; which of their social media advertisements they claim are non-infringing; or the universe of social media platforms on which they placed their ads. The DSW Plaintiffs concede that, as of the date they filed their Complaint, SME had "not yet identified a list of sound recordings" the DSW Plaintiffs had infringed. (¶24).

The DSW Plaintiffs do not contend they sought or obtained permission from SME or any of the other "Labels" to engage in the commercial use of Defendants' copyrighted works. The DSW Plaintiffs nevertheless seek expansive declaratory judgments that both they *and* their unidentified "subsidiaries "are not infringing, have not infringed, and are not liable for infringing *any* valid copyrights" owned by SME or any of the other "Labels." (¶¶62, 69, 76, 83, 89). The DSW Plaintiffs conclude they are entitled to this relief because (1) their infringements are excused under "one or more of the doctrines of estoppel and implied license,"

---

[3] Emphases are SME's unless noted.

or "are covered by one or more license agreements with Instagram, TikTok, and other [unspecified] social media platforms"; (2) SME and the other "Labels" "engaged in conduct that violates [] public polic[y]'"; (3) "the copyrights SME [and the other "Labels"] seek[] to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of [their] own unclean hands"; and (4) of "additional grounds" that the DSW Plaintiffs "believe" exist which they may identify in the future. (¶¶59-60, 66-67, 73-74, 79-80, 87-88).

The DSW Plaintiffs allege no facts specific to SME in support of these defenses—instead identifying conduct by other defendants or resorting to impermissible group pleading. They identify certain press releases issued by one social media platform and certain other defendants to support their implied license/estoppel defenses (¶¶36-39), but they fail to identify any press release by *SME*. They allege the "Labels" committed copyright misuse by "seeking recovery based on social media posts made outside the United States and directed to persons outside of the United States" (¶52), but there is no specific allegation that *SME* did. They allege that "the Labels or other rights holders" posted their own music on their own social media accounts, and that the social media platforms' terms of use allegedly granted them permission to "re-use and re-purpose" music from such posts (¶¶47-49), but they fail to identify any specific recordings posted in this manner, or, even if so posted, that such posts were the source of the music the DSW Plaintiffs incorporated into their own commercial advertisements.

Moreover, the DSW Plaintiffs assert only two conclusory allegations, not specific to SME, arguably relevant to personal jurisdiction. *First*, that "the Labels have directed their false assertions of copyright infringement toward the [DSW Plaintiffs] in Ohio and this District, demanded that the [DSW Plaintiffs] take action in Ohio and this District, and accused the [DSW Plaintiffs] of committing copyright infringement in Ohio and this District." (¶19). *Second*, that,

"[o]n information and belief, the Labels also regularly transact business in Ohio through selling and distributing, and/or facilitating the sale and distribution of, the songs and musical compositions in which they claim to own copyrights." (¶27).

## ARGUMENT

## I. THE DSW PLAINTIFFS CANNOT CARRY THEIR BURDEN TO ESTABLISH PERSONAL JURISDICTION OVER SME

The Court should dismiss SME pursuant to Rule 12(b)(2) because the DSW Plaintiffs cannot meet their burden to make a *prima facie* showing that the Court has personal jurisdiction over SME. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). The DSW Plaintiffs' allegations fail to establish the existence of either general or specific jurisdiction, such that the exercise of jurisdiction over SME would not comport with federal due process. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003).[4]

### A. SME Is Not Subject to General Jurisdiction

SME is not subject to general jurisdiction in Ohio. For a corporate entity like SME, the Supreme Court has effectively limited general jurisdiction to the state of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). SME is a Delaware general partnership with a principal place of business in New York. (¶13; *see also* Jacoby Decl. ¶¶3-4)).

---

[4] Courts have concluded that, following a recent amendment, Ohio's long-arm statute is now co-extensive with the requirements of due process, such that the jurisdiction inquiry collapses into the single question whether the exercise of jurisdiction comports with due process. *Zahara Ariel LLC v. Lionsgate Entm't Corp.*, 2023 WL 4706188, at *2 (S.D. Ohio June 14, 2023).

**B.     SME Is Not Subject to Specific Jurisdiction**

SME is also not subject to specific jurisdiction because the DSW Plaintiffs' allegations fail to demonstrate that this declaratory judgment claim arises out of any activities that SME purposely directed at Ohio. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).

1.     <u>SME's Pre-Suit Settlement Correspondence with the DSW Plaintiffs Is Insufficient to Confer Personal Jurisdiction Over SME</u>

The vague allegation that all the "Labels" asserted infringement claims against the DSW Plaintiffs in Ohio before DSW filed suit (¶19)—which, for SME, apparently only refers to SME's pre-suit settlement emails—is insufficient for specific personal jurisdiction. At best, SME merely notified DSW of SME's claims, without asking that the DSW Plaintiffs do *anything* other than agree to a toll, and such a notice is insufficient to confer personal jurisdiction.

Even if SME had sent the DSW Plaintiffs a naked cease-and-desist or demand letter in which SME had asserted its claims, and did not invite a settlement dialogue, "courts routinely hold that such efforts fail to establish purposeful availment absent evidence of additional enforcement activities." *Paragon Component Sys., LLC v. Qualtim, Inc.*, 2025 WL 1397196, at *5 (E.D. Tenn. Mar. 6, 2025) (collecting cases); *see also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (letter outlining possible claims against defendant is insufficient for personal jurisdiction); *Indus. Trade & Tech., LLC v. Stone Mart Corp.*, 2011 WL 6256937, at *4 (S.D. Ohio Dec. 14, 2011) ("[C]ourts have repeatedly held that cease and desist letters alone are insufficient to confer personal jurisdiction over a defendant.") (collecting cases); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) ("A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter."); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed.

Cir. 1998) ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement.").

Indeed, because an owner of intellectual property rights should be afforded "sufficient latitude to inform others of its [IP] rights without subjecting itself to jurisdiction in a foreign forum," the exercise of personal jurisdiction must rest upon "*other* activities directed at the forum and related to the cause of action *besides the letters* threatening an infringement suit." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008) (cleaned up and original emphasis omitted); *see also J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 658 (N.D. Ohio 2019) ("[T]he relevant inquiry for specific personal jurisdiction is to what extent has the defendant purposefully directed *enforcement activities* at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities.") (collecting cases) (cleaned up and emphasis in original); *Coeus Creative Grp., LLC v. Gaffney*, 2023 WL 5673950, at *11 (E.D. Mich. Sept. 1, 2023) (same).

Thus, "the contacts of relevance to this declaratory judgment action are those that relate to the enforcement or the defense of the validity of [SME's] copyright interests in the works at issue," *other than* the SME communications with the DSW Plaintiffs that precipitated this anticipatory filing. *Bridgeport Music, Inc. v. TufAmerica, Inc.*, 2019 WL 3310866, at *8 (E.D. Mich. Feb. 20, 2019) (cleaned up). The DSW Plaintiffs allege no additional activity.

Regardless, SME sent no such demand letter. To the contrary, from the outset, SME emphasized its desire to reach an out-of-court resolution, and its discussion with the DSW Plaintiffs concerned ways to facilitate the same, including obtaining a tolling agreement and a potential mediation. *See supra* at 3-6.

10

A finding that these communications subject SME to this Court's personal jurisdiction would contravene the well-established "policy favoring settlement." *Red Wing Shoe Co.*, 148 F.3d 1355 at 1361. "If the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter." *Yahoo!*, 433 F.3d at 1208. Indeed, this concern is particularly salient here, given the stark evidence that the DSW Plaintiffs filed this declaratory judgement action to preempt a substantive infringement lawsuit in SME's chosen forum. *See infra* at 12-16.

 Finally, subjecting SME to jurisdiction based upon SME's pre-filing communications with the DSW Plaintiffs would distort the jurisdictional analysis, which turns on a defendant's contacts *with the forum*, <u>not</u> a defendant's contacts *with a plaintiff who resides in the forum. See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."). The happenstance of where a declaratory *plaintiff* is domiciled is not a basis for personal jurisdiction; intentional contact with the forum itself is required. Indeed:

> The only reason [SME] sent communications to [the DSW Plaintiffs] in [Ohio] is because that is where [the DSW Plaintiffs are] located. If [the DSW Plaintiffs were] based out of another state, then [SME] would have had no reason to contact [Ohio] at all. Such limited, litigation-related communications sent to [Ohio] only because that is where [the DSW Plaintiffs are] located are insufficient to establish purposeful availment.

*See Paragon Component Sys.*, 2025 WL 1397196, at *6.

### 2. The Allegation that SME Transacts Business in Ohio Related to the Copyrights at Issue Is Insufficient for Jurisdiction Over SME

The DSW Plaintiffs also cannot establish specific jurisdiction against SME through their one conclusory group allegation that "the Labels" "regularly transact business in Ohio" relating to "the songs and musical compositions in which they claim to own copyrights" (¶27), because "allegations of conducting business in [the forum] are not sufficient to exercise specific personal

jurisdiction over a person." *Cyr v. Real Value Prods., LLC*, 2022 WL 7045559, at *6 (E.D. Mich. Oct. 12, 2022). Indeed, "a defendant's commercialization activity or sales of products covered by its own [intellectual property rights] in the forum state do not support the exercise of specific personal jurisdiction in an action seeking a declaratory judgment of non-infringement and invalidity of those [intellectual property rights]." *Bridgeport Music, Inc.*, 2019 WL 3310866, at *7 (cleaned up) (citing *Avocent Huntsville Corp*., 552 F.3d at 1335); *see also J.M. Smucker Co.* 420 F. Supp. 3d at 654-55 (no purposeful availment to support specific jurisdiction in declaratory judgment action despite "massive sales, marketing, and promotional activities targeting Ohio consumers").

## II. THE COMPLAINT SHOULD BE DISMISSED AS AN IMPROPER ANTICIPATORY ACTION

Even if SME was subject to personal jurisdiction, the Court still should dismiss this anticipatory action that the DSW Plaintiffs improperly filed to prevent SME, as the natural plaintiff, from litigating its infringement claims in its chosen forum. As explained *supra* at 3-6, the DSW Plaintiffs sprinted to the courthouse to file this action only because SME warned that it planned to prepare its own complaint against them, and on *the very same day.* Because a federal declaratory judgment is "not a prize to the winner of the race to the courthouse," *Nat'l Emblem Ins. Co. v. Washington*, 482 F.2d 1346, 1348 (6th Cir. 1973), principles of equity demand that this action be dismissed in favor of SME's substantive copyright infringement case in C.D. Cal.

### A. The First-To-File Rule Does Not Apply to This Declaratory Judgment Action

Although a chronologically first-filed action will *usually* be afforded priority over a later filing, that rule does not apply to declaratory judgment actions. To the contrary, it is well-settled that "[a] plaintiff, even one who files first, does *not* have the right to bring a declaratory judgment in the forum of his choosing." *Certified Restoration Dry Cleaning Network, L.L.C. v.*

12

*Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (emphasis in original). Accordingly, "[c]ases construing the interplay between declaratory judgment actions," like this one, "and suits based on the merits of underlying substantive claims," like SME's C.D. Cal. Action, "create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." *Id.* at 552 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004)). Thus, "when the first-filed action is a declaratory judgment action, the presumption under the first-to-file rule essentially flips" "and the first-filed declaratory judgment action should ordinarily give way to a later-filed substantive suit." *Great Am. Ins. Co. v. Johnson Controls, Inc.*, 2020 WL 6073764, at *5 (S.D. Ohio Oct. 15, 2020) (cleaned up). Indeed, declaratory judgment claims that are based solely on anticipatory affirmative defenses— like the DSW Plaintiffs' claims here—are routinely dismissed as improper because they "deprive[] the plaintiff of his traditional choice of forum and timing, and provoke[] a disorderly race to the courthouse." *Lyons Indus. Inc. v. Am. Standard, Inc.*, 993 F. Supp 609, 614 (W.D. Mich 1997).

For these reasons, courts regularly reject the first-filed rule in declaratory judgment cases where "it appears that the first filed suit was brought in anticipation of forthcoming suit by the substantive plaintiff," *Int'l Union v. Dana Corp.*, 1999 WL 33237054, at *6 (N.D. Ohio Dec. 6, 1999), or where "extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping" exist, *Certified Restoration*, 511 F.3d at 551. Virtually all these factors are present here. Indeed, the record could not be clearer that the DSW Plaintiffs brought this action in anticipation of SME filing its own substantive action and did so in bad faith, via deceptive gamesmanship, to deprive SME of its chosen forum so they could litigate in their home state.

*First*, the sequence of events and timing make clear that the DSW Plaintiffs raced to beat SME to the courthouse to gain a perceived tactical advantage "in anticipation of forthcoming suit by" SME. *Dana Corp.*, 1999 WL 33237054, at *6. SME told DSW it would move forward with a complaint at 3:50 pm on July 9, 2025 (*see supra* at 4), and the DSW Plaintiffs filed this action roughly *three hours later* (*see supra* at 5). Moreover, the threadbare nature of the Complaint, which does not even list the social media posts or copyrighted works at issue and otherwise includes vague allegations lumping all defendants together, suggests the DSW Plaintiffs sprinted to court to get on file as quickly as possible once SME warned it would sue. Indeed, as discussed in more detail (*infra* at 16-19), it is black letter law that a declaratory judgment action for a declaration of non-infringement must plead the specific works that are allegedly non-infringing. The DSW Plaintiffs admit they did not have this information when they filed this action (¶24), which confirms they filed it solely to beat SME's anticipated filing.

The DSW Plaintiffs' post-filing conduct confirms that they filed this suit solely to thwart SME's substantive suit. As set forth above, the DSW Plaintiffs neither obtained a summons nor made any effort to serve SME with this anticipatory filing until *after* SME informed them on August 6 of SME's competing lawsuit in C.D. Cal. (*See supra* at 5). And the DSW Plaintiffs waited even longer to serve SME's co-defendants. (*See supra* at 6).

*Second*, the DSW Plaintiffs engaged in the precise "deceptive gamesmanship" and bad faith which courts routinely hold supports dismissal of a chronologically first-filed declaratory judgment action. *See, e.g.*, *J.M. Smucker Co.*, 420 F. Supp. 3d at 664-65. During the parties' pre-suit filing correspondence, SME repeatedly stated it would prefer to reach a resolution out of court (*see supra* at 3-4) but was also upfront and candid that it could not "promise you that SME will continue to refrain from moving forward" (Jacoby Decl., Ex. B at 7). The DSW Plaintiffs,

on the other hand, never suggested they were considering filing their own declaratory judgment action and repeatedly assured SME they wished to pursue an out-of-court resolution. (*See supra* at 3-4). In fact, just thirty minutes before the DSW Plaintiffs filed this Complaint their counsel told SME: "I continue to believe that a broad settlement discussion is the way to go here, and I will continue to work in that direction, irrespective of whether litigation starts." (Jacoby Decl., Ex. D at 2).

The DSW Plaintiffs' emails thus sought to lull SME into delay, to ensure that the DSW Plaintiffs could race to court to file their Complaint, which—given the timing—the DSW Plaintiffs must have been drafting throughout the time they professed a desire to pursue an out-of-court settlement. At minimum, the DSW Plaintiffs' suggestion in their July 9 email that there was a question as to "whether litigation" would commence was highly deceptive considering they were literally only minutes away from filing their own complaint.

**B.     The *Grand Trunks* Factors Also Favor Dismissal**

Alternatively, the Court should decline to exercise its discretionary jurisdiction over this declaratory judgment action under the well-established *Grand Trunk* factors, all of which either weigh in favor of dismissal or favor neither party. *See Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). *First*, this action would *not* "settle the controversy," because both SME *and* seven of its recorded music affiliates are plaintiffs in the C.D. Cal. Action, and those affiliates are not parties to this action. Additionally, unlike the C.D. Cal. Action, the DSW Plaintiffs' complaint does not address their secondary liability for their influencers' infringing posts. *Second*, this action would serve no "useful purpose in clarifying the legal relations between the parties" over and above the C.D. Cal. Action, given that the issues raised will likely be identical. *Third*, as discussed, DSW has clearly engaged in improper "procedural fencing," which weighs strongly in favor of dismissal. *Fourth*, potential friction with

state courts is not a relevant factor considering both actions are pending in federal court. *Fifth*, the C.D. Cal. Action weighs in favor of dismissal given that it is "a coercive action" and such actions are "an inherently more effective litigation vehicle." *AmSouth Bank*, 386 F.3d at 791.

### III. THE DSW PLAINTIFFS' FAILURE TO PLEAD THE ALLEGEDLY NON-INFRINGING ADVERTISEMENTS OR THE COPYRIGHTED WORKS MANDATES DISMISSAL UNDER RULES 12(B)(1) AND 12(B)(6)

The DSW Plaintiffs' Complaint is defective for another, independent reason: it fails to identify both the social media advertisements that the DSW Plaintiffs claim are non-infringing and the copyrighted works in dispute. Rather than plead these key facts, the DSW Plaintiffs seek a catchall declaration that they "are not liable for infringing *any* valid copyrights owned by Defendant SME," (¶62)—which number in the hundreds of thousands—and they repeat that same allegation as to each other Declaratory Defendant. Without alleging the copyrights at issue, and the specific uses alleged to be non-infringing, the DSW Plaintiffs' vague allegation fails to satisfy the pleading standard established by Rule 8(a)(2), *Iqbal*, and *Twombly*, and fails to establish a "case or controversy" sufficient to confer federal subject matter jurisdiction.

Rule 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard is liberal, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That standard "requires, at a minimum, that the complaint advise each defendant of what he allegedly did or did not do that forms the basis of the plaintiff's claim against him." *Bergeron v. Oakland Cty.*, 2024 WL 4982890, at *5 (E.D. Mich. Dec. 4, 2024). To satisfy Article III's "case or controversy" requirement and the prerequisites of the Declaratory Judgment Act, a plaintiff seeking a declaratory judgment "must plausibly allege facts that, under all the circumstances, show that

16

there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Saginaw Cty., v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020) (cleaned up). The DSW Plaintiffs fail to meet these standards.

### A. The DSW Plaintiffs' Failure to Identify the Social Media Advertisements at Issue Mandates Dismissal

Courts have repeatedly held that a declaratory judgment plaintiff like the DSW Plaintiffs "must," at minimum, "specify the products or conduct alleged not to infringe." *Xilinx, Inc. v. Invention Inv. Fund I LP*, 2011 WL 3206686, at *6 (N.D. Cal. July 27, 2011) (collecting cases); *cf. Parson v. Barney*, 2023 WL 5447287, at *9 (D. Minn. Aug. 24, 2023), *report and recommendation adopted*, 2023 WL 6387869 (D. Minn. Sept. 29, 2023) ("A claim for injunctive or declaratory relief must be sufficiently precise to put the court and the defendants on notice of what the plaintiff is asking the court to do.") (citing *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

"[W]ithout identifying the accused products, there simply is no way to adjudicate an infringement claim" and "no concrete case or controversy or sufficient specificity to satisfy *Twombly* and *Iqbal*." *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, 2011 WL 1654466, at *12 (N.D. Cal. Apr. 28, 2011). This rule applies even where "Defendants threatened suit against the Plaintiffs," and therefore presumably "know which products infringe." *Id.*[5]

Here, the DSW Plaintiffs fail to identify the "accused products" at issue—*i.e.*, the specific allegedly non-infringing social media advertisements that they created, posted, and/or

---

[5] Moreover, at this stage, only the DSW Plaintiffs know the full extent of their infringement of SME's copyrighted sound recordings, in part because certain social media posts are publicly viewable for only around twenty-four hours, and other infringing posts were taken down or the music was removed before SME discovered them.

made available to social media users. Consequently, their Complaint fails to state a claim or raise a "case or controversy" sufficient for subject matter jurisdiction.

### B. The DSW Plaintiffs Impermissibly Ask the Court for an Advisory Opinion by Failing to Identify the SME Copyrights at Issue

The Court also lacks subject matter jurisdiction over this action, because by seeking a declaration of non-infringement without "referenc[ing] any specific copyright" they allegedly have not infringed, the DSW Plaintiffs are "necessarily" seeking an impermissible "advisory opinion." *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1269 (S.D. Cal. 2007); *see also Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC*, 2017 WL 1386357, at *7 (S.D.N.Y. Apr. 17, 2017) (dismissing on subject matter jurisdiction grounds a complaint seeking "a blanket approval of [plaintiff's] business model, without reference to any specific copyright held by [defendant] or any specific act of direct infringement").

In *Veoh*, for example, a video hosting service that had been accused of massive infringement and threatened with litigation by a "large record and music publishing company" sought a declaration "that their video hosting service falls within the DMCA Section 512(c) safe harbor." *Veoh*, 522 F. Supp. 2d at 1268.

The court dismissed on subject matter jurisdiction grounds, holding:

[B]ecause Plaintiff does not reference any specific copyright, even by way of example, the relief requested would necessarily take the form of an advisory opinion. Succinctly, the Court cannot determine whether a safe harbor for copyright infringement exists without knowing which rights are at stake. Rather than specific relief through a decree of conclusive character, Plaintiff seeks a blanket validation of the ongoing legality of their business model. Divorced from a particular dispute over specific rights, Plaintiff's Prayer for Relief would have the Court declare a safe harbor as equally applicable against Defendant as to any other copyright holder. Such a declaration's effect on each one of Defendant UMG's copyrights would be uncertain enough; the effect on all other copyright holders not before the Court would be even more nebulous.

18

*Id.* at 1269.[6]

The DSW Plaintiffs fail to plead any specific SME copyright at issue. "[R]ather than seeking defined declarations of noninfringement regarding existing or foreseeable disputes about specific copyrights and instances of infringement, [DSW] seeks broad declarations about every possible conflict that has occurred or could occur in the future." *Windstream Servs., LLC*, 2017 WL 1386357. Thus, the DSW Plaintiffs do not satisfy Rule 8, *Iqbal* and *Twombly*, and fail to allege facts sufficient to establish an actual controversy sufficient for subject matter jurisdiction.

## IV. THE COURT SHOULD STAY DISCOVERY PENDING RESOLUTION OF THE INSTANT MOTION

The Court should exercise its "broad discretion and inherent power to stay discovery until [the] preliminary questions [which SME raises and] that may dispose of the case are determined." *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999). As the Sixth Circuit has recognized, "[l]imitations on pretrial discovery are appropriate where[, as here,] claims may be dismissed based on legal determinations that could not have been altered by any further discovery." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 305 (6th Cir. 2003) (cleaned up). The Court should issue a stay because SME's "burden of proceeding with discovery" outweighs any "hardship which would be worked by a denial of the discovery." *Victoria's Secret Stores Brand Mgmt., Inc. v. Bob's Stores LLC*, 2014 WL 1045994, at *2 (S.D. Ohio Mar. 17, 2014) (cleaned up).

Numerous factors support a stay of discovery in this case. First, SME brings a dispositive motion on three independent, well-founded grounds that will be resolved by "legal

---

[6] The Court held, in the alternative, that plaintiff's declaratory judgment action was an improper anticipatory suit subject to dismissal in favor of a subsequently filed infringement action brought by the declaratory defendant. *Id.* at 1271-72.

determinations that [will] not [be] altered by any further discovery." *Gettings*, 349 F.3d at 305. Second, one of SME's meritorious grounds is the lack of personal jurisdiction, which is a "threshold issue that determines whether a court has the power to bind the defendant" *Victoria's Secret*, 2014 WL 1045994, at *2; *see id.* ("It would make little sense for the Court to adjudicate discovery disputes without first deciding whether it has the power to bind Defendant."). Third, "this case is in the very early stages of litigation"—the Complaint was filed recently, and the parties have not yet held an initial pretrial conference. *Id.*; *see also Begum v. U.S. Dep't of State*, 2024 WL 4871599, at *2 (S.D. Ohio Nov. 22, 2024). Finally, the DSW Plaintiffs will suffer no hardship from a short stay at this early stage. Indeed, DSW is seeking a stay of discovery in the C.D. Cal. Action (*see* C.D. Cal. Dkt. 27 at 5), although for reasons that are not valid and which SME does not advance here, so DSW has effectively conceded that a stay is appropriate.

Courts in this Circuit and District have granted stays under similar circumstances to resolve threshold issues. *See, e.g.*, *Begum* 2024 WL 4871599, at *2 (granting a stay where the dispositive motion "could dispose of this action" or "clarify the issues presented" and the case was in "its initial stages," meaning the Court could not "conceive" how the plaintiff would "be unduly prejudiced or tactically disadvantaged by a short stay designed to simplify the discovery process."); *Gilbert v. Ferry*, 401 F.3d 411, 416 (6th Cir. 2005) (affirming trial court's stay of discovery pending ruling on dispositive motions, including jurisdictional issue); *Gettings*, 349 F.3d at 305 (same re discovery stay pending resolution of dispositive motion); *Victoria's Secret*, 2014 WL 1045994, at *2 (staying merits discovery while personal jurisdiction issue was being resolved). The Court should grant a stay in this case as well.

## **CONCLUSION**

For the foregoing reasons, the Court should grant SME's Motion to Dismiss the Complaint and grant a stay of discovery pending decision on this Motion.

Date: October 20, 2025 Respectfully submitted,

/s/ Shawn J. Organ
Shawn J. Organ, Esq. (0042052)
*Trial Attorney*
Connor A. Organ, Esq. (0097995)
**ORGAN LAW LLP**
1330 Dublin Road
Columbus, OH 43215
P: 614-481-0900
F: 614-481-0904
sjorgan@organlegal.com
corgan@organlegal.com

Cynthia S. Arato, Esq. (*pro hac vice*)
Avery D. Medjuck, Esq. (*pro hac vice*)
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
212-257-4880
carato@shapiroarato.com
amedjuck@shapiroarato.com

*Attorneys for Defendant*
*Sony Music Entertainment*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on October 20, 2025, a true and accurate copy of the

foregoing Motion to Dismiss and for a Stay of Discovery was filed via the Court's ECF system

and will be served on any party that has appeared via that system.


<u>/s/ Connor A. Organ</u>

*One of the attorneys for Defendant*
*Sony Music Entertainment*