# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DESIGNER BRANDS INC., DSW SHOE WAREHOUSE, INC., AND TOPO ATHLETIC LLC, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | **Case No. 2:25-cv-00765-MHW-EPD** |
| SONY MUSIC ENTERTAINMENT, SONY MUSIC PUBLISHING (US) LLC, UMG RECORDINGS, INC., UNIVERSAL MUSIC PUBLISHING, INC., BMG RIGHTS MANAGEMENT (US) LLC, | ) ) ) ) ) ) ) | **Judge Michael H. Watson** **Magistrate Judge Elizabeth A. Preston Deavers** |
| *Defendants.* | ) ) | |

## FIRST AMENDED COMPLAINT FOR A DECLARATORY JUDGMENT

Plaintiffs Designer Brands Inc. ("DBI"), DSW Shoe Warehouse, Inc. ("DSW"), and Topo Athletic LLC ("Topo"; DBI, DSW and Topo are collectively "Plaintiffs" or the "DBI Entities"), brought this action against Sony Music Entertainment ("SME"), Sony Music Publishing (US) LLC ("SMP"), UMG Recordings, Inc. ("UMG"), Universal Music Publishing Group, Inc. ("UMPG"), and BMG Rights Management (US) LLC ("BMG"), seeking a declaratory judgment that Plaintiffs, along with their affiliates and subsidiaries, do not infringe any valid copyright held by the Labels (as defined below). Plaintiffs now bring this First Amended Complaint to, *inter alia*, add new defendants Sony Music Entertainment US Latin LLC, Arista Music; Arista Records, LLC; Ultra Records, LLC; Zomba Recording LLC, Records Label, LLC, and Laface Records, LLC (the "SME Defendants"), which along with SME[1] filed suit against Plaintiffs as co-plaintiffs in *Sony Music*

---

[1] SME, the Sony Defendants, SMP, UMG, UMPG and BMG are collectively referenced as "Defendants" or the "Labels."

*Entertainment, et al. v. Designer Brands Inc. et al.*, Case No. 2:25-cv-07285 (C.D. Cal.) ("*SME* case") on August 6, 2025 in response to the filing of the original Complaint in this action. Plaintiffs also include certain amendments to moot SME's pending motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 28. Plaintiffs file this First Amended Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

## INTRODUCTION

1. Social media has changed the way music is shared, used, and discovered. Every day, thousands of users include music in posts on their accounts on websites like Instagram, TikTok, Facebook, YouTube and other social media "platforms." Social media platforms host these accounts so individuals, groups and businesses can post content that to be published by the platform on the Internet. Social media platforms like Instagram, TikTok and Facebook also offer their users the ability to enhance their posts by adding content provided by the platform or other authorized entities via the platform, including music. Some users are content creators who add music to their posts to engage viewers, participate in trends, and help promote themselves, their brands, and their businesses. The Labels support these commercial uses of music because sharing music on social media not only benefits users of the platforms, but it also promotes the Labels' businesses and makes the Labels money.[2]

2. Indeed, many times, users add music to their post from music libraries that are accessible to all users from the social media platform itself under a license with the Labels. Users upload videos to their accounts (without music), add a sound clip offered by the platform, and then

---

[2] This First Amended Complaint frequently refers to the Labels as a group not to disregard their corporate differences but because each of the Labels have engaged in the same conduct and appear to have similar agreements with the social media platforms in this case. Discovery will determine whether the Labels have independently chosen the same (or similar) courses of action or coordinated with one another.

post the video and music together. These actions are authorized and even encouraged by the platforms—as well as the Labels, who claim to own copyrights to the musical compositions and recordings offered by the platforms or otherwise available to social media users. Indeed, the Labels and the social media platforms themselves have touted in the press that they have reached license agreements that permit users to incorporate the Labels' music into their posts. And, on information and belief, the Labels are paid millions of dollars because users incorporate their music into posts shared on social media.

3.      DSW and Topo are longstanding, respected sellers of shoes and accessories around the country. Like other businesses in the modern age, they maintain social media accounts where they post in support of their brands. In so doing, DSW and Topo have followed the platforms' approved methods of incorporating music in their posts on Instagram, TikTok and other social media platforms. The Labels, however, now seek to pull the rug out from under DSW's business operations. In an about-face, the Labels have recently claimed that the very conduct that they previously encouraged and supported—*i.e.*, incorporating samples of music into social media posts—constitutes copyright infringement when done by DSW and Topo. Their apparent theory is that because DSW and Topo are operating a business, the Labels' promises that users of social media were free to incorporate their music into their posts are no longer any good. As discussed below, however, the Labels freely permit and encourage other users to incorporate music in their posts to promote themselves and their brands and businesses.

4.      The Labels' conduct has been misleading, improper, and violates the bargain the Labels struck with social media users as well as the constraints of copyright law. The Labels never excluded businesses from their prior promises that users of their platforms can incorporate the Labels' music as part of their posts. To the contrary, the Labels' press releases say the opposite.

3

Moreover, even where the platforms' terms of service discuss the "commercial use" of music, the platforms and the Labels agree to and promote certain commercial uses of the music, including, on information and belief, monetization by users (*e.g.*, requesting tips), promotion of revenue-generating accounts and businesses (*e.g.*, via Linktrees), and promotion of users' brands, personalities and/or careers (*e.g.*, by users who influencers, actors, musicians, and comedians). And, as discussed below, other terms of service permit all users to incorporate music into their posts, regardless of the type of user account or whether the use is purportedly "commercial" or not.

5. On information and belief, the Labels knew *for years* of the widespread use of music in social media in posts like the DBI Entities' accused social media posts and said nothing to the DBI Entities or others until they threatened to file a lawsuit. On information and belief, the Labels have also already been paid royalties for the music in the DBI Entities' accused social media posts. These royalties include not only payments that the DBI Entities are informed and believe are received by the Labels from social media platforms themselves but also from the free advertising that the Labels and their associated businesses receive. Indeed, incorporating a sample from a song in a social media post—whether by the DBI Entities or any other user—promotes sales of the complete musical works. The Labels have publicly encouraged users, including the DBI Entities, to share music on social media because, as discussed herein, it benefits them.

6. Having set up a system in which there is widespread commercial use of music that benefits the Labels, the Labels now seek to enrich themselves further by threatening selective (and hypocritical) copyright claims against users whom the Labels perceive as willing and able to make a payout. The DBI Entities, however, will not permit the Labels to bully them, abuse copyright law, and cast a shadow over their businesses with baseless threats of copyright infringement.

4

Plaintiff DBI, through its subsidiaries, is one of the world's leading designers, producers, and retailers of footwear brands and accessories. DSW opened its first store in 1991 in Dublin, Ohio. DBI now owns subsidiaries that operate nearly 500 stores in 45 U.S. states, including via Plaintiffs DSW and Topo. The DBI Entities' business is fashion, in which brand and appearance are critical to success: the DBI Entities guard their own intellectual property carefully and respects the intellectual property of others. The DBI Entities have relied upon the promises of the Labels and the social media platforms where they post content, and they have followed the law.

7.     The Labels' threats to file copyright infringement lawsuits based on the DBI Entities' lawful conduct—and SME's and SME Defendants' retaliatory filing of such a lawsuit in the *SME* case—are deliberate attempts to extract still more money for copyrights on which they have already received full compensation. The Labels are major record labels with extensive experience in copyright law, and they know that a cause of action for copyright infringement is expensive to defend and can carry with it statutory damages of up to $150,000 for each work, if the infringement is found to be willful. The power to assert a copyright claim, even unlawfully, is a cudgel that can be used to force unjustified settlement payments from innocent users of social media platforms, including the DBI Entities, who are only doing what the platforms permit and what the Labels have encouraged.

8.     Worse, the Labels seek to exploit the inconsistencies in what they now contend is a permissible "commercial use" and what is supposedly an impermissible "commercial use" of a work. As one example, most if not all the social media posts that the Labels have threatened or accused are not promoted posts or typical advertisements but are so-called "organic posts"—*i.e.*, the kind of posts that individual users make every day, which are ***not*** promoted by users (including Plaintiffs) and which are subject to the social media platforms' standard algorithms. As another

5

example, the Labels acquiesce to the commercial use of music on social media platforms by users, including by permitting users to monetize posts that contain music. As still another example, on information and belief, the Labels have known for years of posts like the DBI Entities' accused posts but have taken no action and/or sought to resolve any claims in confidential settlement agreements so as not to alert the public. The Labels have blurred the differences between what they now view as permissible and impermissible "commercial uses" to encourage conduct that benefited them but which they now retroactively claim to be copyright infringement. If the Labels' theories of infringement are correct—and the DBI Entities do not agree that they are—the Labels have waived and acquiesced to the alleged "infringements" in this case, and have impliedly licensed or abandoned their right to assert copyright infringement claims against the DBI Entities based on at least organic posts.

9. Thus, there is a real and justiciable controversy for this Court to resolve and this is a matter of significant public policy concern. Each Defendant has threatened to file suit for copyright infringement against DBI, DSW, and Topo. One major label has already filed such a lawsuit in this District: *Atlantic Recording Corporation, et al. v. Designer Brands, Inc., et al.*, Case No. 2:25-cv-00479-MHW-EPD (S.D. Ohio. Eastern Division) (the "*WMG* case"), which is currently pending before Judge Michael H. Watson and Magistrate Judge Elizabeth A. Preston Deavers. After the filing of the original Complaint in this lawsuit, SME and the Sony Defendants also filed the *SME* case. As described below, many of the copyrights in sound recordings and compositions that are the purported bases for the causes of action in the *WMG* case and *SME* case relate to the same songs and social media posts—and, in at least the *WMG* case, are based on some of the same copyrights—that supposedly support several of the other Labels' threatened causes of action against the DBI Entities. The claims and threatened causes of action of the Labels in this

6

case overlap with one another and with the causes of action in the *WMG* case and *SME* case/. All these related cases should all be heard together in one forum and in a consolidated proceeding.[3]

10.     In short, this case is about the Labels' greed. The Labels have already received all the compensation they deserve for any use of their music in the DBI Entities' posts. The Labels have allowed widespread use of music on social media platforms to make money and now selectively target certain users—such as the DBI Entities—because they see an opportunity to make still more money. The Labels are trying to leverage the copyright laws of the United States for an improper purpose: to get payments from the DBI Entities to which they are not entitled.  But the Labels' threatened copyright infringement lawsuits are barred under the doctrines of estoppel, license, copyright misuse, waiver, acquiescence, abandonment, and the other defenses set forth below, and discovery may reveal further grounds for counterclaims based on the Labels' course of conduct. The DBI Entities will not continue to allow the Labels to threaten them or their subsidiaries or affiliates with baseless copyright allegations to extract unfair and unlawful settlement payments or cast a shadow over their business. The DBI Entities file this declaratory judgment action to expose the Labels' improper conduct, clear their names, and resolve the Labels' improper allegations of copyright infringement in their favor.

**THE PARTIES**

11.     Plaintiff DBI is an Ohio corporation with its principal place of business in Columbus, Ohio.

12.     DBI is publicly traded and owns and operates various subsidiaries that sell shoes

---

[3] Plaintiffs have filed a motion to dismiss or transfer the *SME* case for lack of personal jurisdiction, improper venue, the first-to-file rule, and party and judicial convenience, which is currently pending.

and other goods, including DSW and Topo. DBI is a holding company. Nonetheless, the Labels have accused DBI of copyright infringement, so DBI joins in this action as a plaintiff.

13. Plaintiff DSW is a Missouri corporation with its principal place of business in Columbus, Ohio.

14. Plaintiff Topo is a Delaware limited liability company with a place of business in Columbus, Ohio.

15. On information and belief, Defendant Sony Music Entertainment ("SME") is a Delaware general partnership with its principal place of business in New York, New York.

16. On information and belief, the Sony Defendants "are affiliated record companies engaged in the business of producing, manufacturing, distributing, and/or licensing sound recordings." *Sony Music Entertainment, et al. v. Designer Brands Inc. et al.*, Case No. 2:25-cv-07285 (C.D. Cal.), Dkt. 1, Complaint at ¶ 18.

17. On information and belief, all Sony Defendants except Sony Music Entertainment US Latin LLC have the states of incorporation or formation as set forth in Paragraphs 20 through 26 of SME's and the Sony Defendants' Complaint in *Sony Music Entertainment et al. v. University of Southern California*, Case No. 1:25-cv-02042-GHW (S.D.N.Y.), Dkt. 1, filed March 11, 2025.

18. On information and belief, Sony Music Entertainment US Latin LLC is a Delaware corporation with a principal place of business in Coconut Grove, Florida.

19. On information and belief, Defendant Sony Music Publishing (US) LLC ("SMP") is a Delaware limited liability company with its principal place of business in New York, New York.

20. On information and belief, Defendant UMG Recordings, Inc. ("UMG") is a Delaware corporation with its principal place of business at 2220 Colorado Avenue, Santa Monica,

California 90404.

21.     On information and belief, Defendant Universal Music Group Publishing, Inc. ("UMGP") is a Delaware corporation with its principal place of business at 2105 Colorado Avenue, Santa Monica, California 90404.

22.     On information and belief, Defendant BMG Rights Management (US) LLC ("BMG") is a Delaware limited liability corporation with its principal place of business at One Park Avenue, 18th Floor, New York, New York 1001.

<strong>JURISDICTION, JOINDER AND VENUE</strong>

23.     This action arises under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. The Court has subject matter jurisdiction pursuant to at least 28 U.S.C. § 1331 as this action arises under the laws of the United States and seeks a declaration that DBI and its subsidiaries do not infringe any valid U.S. copyright under the Copyright Act.

24.     The Court has personal jurisdiction over each of the Labels in this action. As discussed below and throughout this Complaint, each of the Labels have directed their false assertions of copyright infringement toward the DBI Entities in Ohio and this District, demanded that the DBI Entities take action in Ohio and this District, accused the DBI Entities of committing copyright infringement in Ohio and this District, and caused harm to the DBI Entities in Ohio and this District.

25.     For example, SME and the Sony Defendants repeatedly threatened the DBI Entities with infringement claims allegedly based in substantial part on activities that occurred in Ohio and this Judicial District. SME and the Sony Defendants also sought to enter into a tolling agreement which would have applied to and bound the DBI Entities, knowing that DBI and DSW have

9

principal places of business in Ohio and this Judicial District and Topo has a place of business in Ohio and this Judicial District. Although SME and the Sony Defendants refused to identify the basis for their purported copyright infringement claims against each of the DBI Entities until they filed the *SME* case, they sought to put a cloud over the DBI Entities' ability to conduct their business in Ohio and this Judicial District.

26.     SME's and the Sony Defendants' threats to bring copyright infringement claims against the DBI Entities caused foreseeable injury in Ohio and this Judicial District, including diverted employee time, attorneys' fees, and negative press in the local media.[4]

27.     SME and some or all the Sony Defendants also regularly avail themselves of courts in Ohio, including in this Judicial District, as both plaintiffs and defendants. For example, a public records search indicates SME or its predecessors have appeared multiple times in courts in the State of Ohio as a plaintiff or defendant. Arista Records, Inc. and other Sony Defendants, have also appeared multiple times in courts in the State of Ohio as a plaintiff or defendant.

28.     On information and belief, SME has transacted business in Ohio and this Judicial District involving some of the very same copyrights that they seek to assert against the DBI Entities. For example, on information and belief, SME transacts business with Promotions West Live, which owns some of the largest venues in Columbus, Ohio, including KEMBA Live!, A&R Music Hall and Newport Music Hall. On information and belief, SME also transacts business with other venues in Ohio, sends speakers to events at colleges in Ohio (such as Ohio University's Music Industry Summit), and promotes, sells or authorizes the sale of copyrighted works to record stores.

---

[4] *See, e.g.*, "'Crazy in Love' with DSW shoes? Just don't use Beyonce without permission, labels say in lawsuit," The Columbus Dispatch, November 6, 2025, https://www.dispatch.com/story/news/courts/2025/11/06/major-music-labels-sue-ohio-dsw-songs-tiktok-instagram-shoes/87121662007/ (last visited November 8, 2025).

29.     SME and the Sony Defendants also intentionally included songs that are the subjects of the copyright claims they seek to assert against the DBI Entities in the music libraries of the platforms with knowledge that those songs may be added to posts by persons and entities in Ohio and this Judicial District. SME and the Sony Defendants are now seeking to enforce those very same copyrights against parties in Ohio and this Judicial District based on alleged actions performed in Ohio and this Judicial District using songs from the platform's song libraries.

30.     Moreover, on information and belief, SME's contacts with Ohio, and purposeful availment and direction towards Ohio, is also on behalf of each of the Sony Defendants and includes one or more of the copyrights identified in Exhibit A to SME's and the Sony Defendants' Complaint in the *SME* case. *See* Dkt. 1-1 (Exhibit A to SME and the Sony Defendants' Complaint). SME has also acted as the Sony Defendants' agent for the purposes of the claims and defenses in this case.

31.     Each of SMP, UMG, UMPG and BMG have also threatened the DBI Entities with infringement claims allegedly based in substantial part on their activities in Ohio and this Judicial District. On information and belief, each of SMP, UMG, UMPG and BMG have also transacted business in Ohio.

32.     On information and belief, the Labels also regularly transact business in Ohio through selling and distributing, and/or facilitating the sale and distribution of, the songs and musical compositions in which they claim to own copyrights. For example, as described above, SME and the Sony Defendants have had extensive contacts with and regularly transact business in Ohio. It is proper for the Court to exercise personal jurisdiction over each Defendant for this reason as well.

33.     If SME renews its motion to dismiss for lack of personal jurisdiction, or if any other

11

Defendant challenges jurisdiction or venue in this District, Plaintiffs will seek appropriate discovery to detail the full extent of Defendants' contacts with Ohio and this District.

34.     Additionally, as alleged below, the Labels' purported causes of action for copyright infringement overlap with one another and the causes of action asserted in the *WMG* case, which is already pending in this District alongside this action.  These two matters are both before the same Judge, the Hon. Michael H. Watson. It therefore serves the interest of judicial economy to have these closely related disputes, involving mostly Ohio companies and conduct in Ohio, decided in the Southern District of Ohio before this Court.

35.     DBI, DSW, and Topo are all named defendants in the *WMG* case, which is currently pending in this District. DBI, DSW, and Topo are each accused of copyright infringement by Warner Music Group and/or its affiliates and subsidiaries in the *WMG* case, including, on information and belief, on songs in which the Labels in this case claim to own some or all of the asserted copyright.

36.     For example, SMP has asserted to have whole or partial "control" over dozens of songs that form the basis for the cause of action asserted by the DBI Entities in the *WMG* case. *Compare* Ex. 1 at 3-10 *with WMG* Case, Dkt. 1-1 (Schedule A to the original Complaint) and Dkt. 19-1 (Schedule A to the Amended Complaint).

37.     Similarly, UMG and UMPG have alleged that "[m]any, if not all, of the sound recordings" that are the basis for the cause of action asserted in the *WMG* case "embody musical compositions owned and/or controlled in whole or part by UMPG." Ex. 2 at 1. Upon information and belief, there may be overlapping or disputed ownership and/or control with respect to many of the copyrights at issue, giving rise to the potential for duplicative or inconsistent judgments if these related claims are not adjudicated in a single forum.

38. SME refused to identify the basis for its copyright infringement threats in its pre-suit exchanges with the DBI Entities. With the filing of the *SME* case, however, SME and the Sony Defendants belatedly identified the purported basis for their claims in Exhibit A to their Complaint. *See SME* case, Dkt. 1-1 (Exhibit A to SME and the Sony Defendants' Complaint in the SME case). The music and posts identified as the basis for SME's and the Sony Defendants' claims also partially overlap with the music and posts at issue in the *WMG* case. SME's and the Sony Defendants' accusations against posts that were already at issue in the *WMG* case is further evidence of SME's and the Sony Defendants' purposeful direction toward Ohio and this Judicial District. Again, Sony's claims ought to be resolved by this Court.

39. BMG has not yet identified a list of sound recordings or compositions that are the grounds for their alleged cause of action against the DBI Entities. The manner in which rights to copyrights are distributed in the music industry, however, makes it virtually certain that the song recordings and/or compositions that are the basis for SME's and BMG's purported cause of action against the DBI Entities at least partially overlap the sound recordings and/or compositions that are also owned, in whole or part, by the other the Labels in this lawsuit as well as one or more plaintiffs in the *WMG* case.

40. The overlap in the Labels' causes of action in this action and the plaintiffs in the *WMG* case, including that they own copyrights in the same song, musical recording(s) and/or composition(s) provide a proper basis to join all of the Labels in this action. On information and belief, the Labels are seeking to assert claims based on the same alleged predicate acts and the same copyrights against the DBI Entities.

41. The overlap between the copyrights and causes of action that form the basis for this action further overlap with the copyrights and cause of action in the *WMG* case, making it proper

to join and consolidate this action with the *WMG* case. The DBI Entities intend to file such a motion at the appropriate time.

42. For at least the foregoing reasons, and the additional facts set forth below, venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this cause of action arose in this District. Moreover, although not applicable to this declaratory judgment action, were the Labels to follow through on their threats and file complaints for copyright infringement against the DBI Entities, this District is a proper venue for this cause of action under 28 U.S.C. § 1400(a) as it is where the DBI Entities reside or may be found. Indeed, the DBI Entities have moved to dismiss the *SME* case, or alternatively transfer the *SME* case to this District, in part because venue for the parties' dispute is not proper in the Central District of California but is proper in this Judicial District.

## FACTS

43. DSW and Topo advertise their products through a variety of channels, including posts on social media accounts associated with their brands. These social media accounts are on various well-known social media platforms, including Instagram and TikTok.

44. Instagram, TikTok, and other social media platforms make music available to their users, such as DSW, for use as the audio to accompany posts on their platforms. These musical recordings are typically not full songs but snippets or partial samples of songs that users of Instagram and TikTok can add to their posts prior to the posts becoming public. These samples are added by users of Instagram and TikTok into a post that they generate with other visual and audio content, and then the post is published on the social media platform.

45. DSW and Topo follow Instagram's and TikTok's Terms of Service and their standard posting procedures in accordance with Instagram's and TikTok's policies when creating posts on the social media accounts associated with their brands. DSW and Topo use the music

14

snippets and samples offered by Instagram and TikTok in creating their posts. DSW and Topo create a unique post with visual or audio-visional content and then, after uploading the post, sometimes incorporate a snippet of music that is offered by the social media platform prior to publishing the post on the platform.

46. As stated above, DBI is a holding company that provides certain corporate services to its direct and indirect subsidiaries. In the past, DBI made limited posts to certain platforms, but it currently makes and publishes no posts on any traditional social platform, including Instagram or TikTok. Instead, DBI's current posting activity is limited to LinkedIn and DBI's content on LinkedIn does not include music.

47. The Terms of Service provided by Instagram and TikTok state that users can include music samples from Instagram's and TikTok's libraries when creating posts on user accounts. On information and belief, these Terms of Service have not distinguished[5] between user accounts associated with individuals, businesses, or other groups or entities when discussing the incorporation of music into a post. These Terms of Service also indicate that the rights for users to incorporate music in their posts are based on one or more licenses between the platform and the relevant rights holder(s). For example, Instagram's Terms of Service state the following in relevant part with regard to the incorporation of music in posts with "videos":

> Our partnerships with rights holders have brought people together around music on our platforms. As part of our licensing agreements, there are limitations around the amount of recorded music that can be included in Live broadcasts or videos. While the specifics of our licensing agreements are confidential, today we're sharing some general guidelines to help you plan your videos better:
>
> - Music in stories and traditional live music performances (e.g., filming an artist or band performing live) are permitted.

---

[5] The platforms' terms of service span multiple pages and are periodically amended; although some terms of service contain discussions of difference between types of accounts (business vs. personal) but, on information and belief, not regarding the use of music during the relevant period.

15

- The greater the number of full-length recorded tracks in a video, the more likely it may be limited (more below on what we mean by "limited").
- For that reason, shorter clips of music are recommended.
- There should always be a visual component to your video; recorded audio should not be the primary purpose of the video.

These guidelines are consistent across live and recorded video on both Facebook and Instagram, and for all types of accounts – i.e. pages, profiles, verified and unverified accounts. And although music is launched on our platforms in more than 90 countries, there are places where it is not yet available. So if your video includes recorded music, it may not be available for use in those locations.[6]

48.     Similarly, TikTok's Terms of Service state that users may incorporate music provided by TikTok into their posts. On information and belief, TikTok's Terms of Service have not always distinguished between user accounts associated with individuals, businesses, or other groups or entities when discussing the incorporation of music into a post. For example:

Users of the Services may also overlay music, graphics, stickers, Virtual Items (as defined and further explained Virtual Items Policy) and other elements provided by TikTok ("TikTok Elements") onto this User Content and transmit this User Content through the Services.[7]

49.     Moreover, although Instagram's and TikTok's Terms of Service do contain certain terms warning about uploading music, creating playlists, and uploaded or user-supplied music, none of these additional terms limit or rescind the ability of users to incorporate music provided by Instagram and TikTok into a post. For example, although TikTok's Terms of Service have stated that "NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE"[8] this limitation applies, at most, only to uses of music provided

---

[6] https://about.instagram.com/blog/announcements/updates-and-guidelines-for-including-music-in-video (last visited July 3, 2025).
[7] https://www.tiktok.com/legal/page/us/terms-of-service/en (last visited November 5, 2025).
[8] https://www.tiktok.com/legal/page/us/terms-of-service/en (last visited November 5, 2025).

by TikTok outside of TikTok's platform when read in connection with TikTok's other Terms of Service.

50.     The Labels have identified provisions in Instagram's and TikTok's Terms of Service that state that posts should not include "commercial" or "nonpersonal" use of music outside of certain exceptions. The Labels and the platforms, however, have blurred or contradicted those provisions by allowing and encouraging commercial use of music in posts, including posts that earn money for users via a variety of means. For example, users have been permitted to make commercial use of music with the Labels' permission, encouragement and/or license (express or implied) in which they solicit money from viewers (*e.g.*, by requesting tips). On information and belief, the Labels have also encouraged users to include the Labels' alleged copyrighted music in posts or on accounts to promote themselves or their careers, or to advertise or link other platforms and accounts where additional monetization can occur. On information and belief, the Labels knowingly permitted users to commercially exploit music to earn tips, promote themselves or their brands, drive traffic to other social media platforms and businesses, and otherwise exploit the Labels' music for commercial purposes.

51.     Instagram, TikTok, and other social media platforms permitted users to incorporate music into their posts because, on information and belief, they have entered into license agreements with rights holders that permit such uses. For example, Instagram's Terms of Service alludes to these license agreements and refers to Instagram's "partnerships with rights holders" to permit users to incorporate music into their posts.[9] Moreover, TikTok has advertised entering into

---

[9] https://about.instagram.com/blog/announcements/updates-and-guidelines-for-including-music-in-video (last visited July 3, 2025).

agreements with rights holders to permit music to be incorporated into posts on its platform.[10]

52.     On information and belief, the Labels and the platforms have agreed to procedures or mechanisms to "mute" music in posts or otherwise permit the Labels to police how music is used on the platforms. On information and belief, the Labels chose not to use or apply those procedures or mechanisms for at least some of the accused posts by the DBI Entities.

53.     The Labels have also promoted and advertised that they have entered into license agreements with social media platforms. For example, Defendants UMG and UMPG have published at least two press releases dated December 21, 2017 and August 12, 2024 touting their partnership with Instagram's parent companies to permit its music to be shared by users on Instagram. They issued two more press releases dated February 8, 2021 and May 1, 2024 touting a similar partnership with TikTok. All of these press releases encourage users to include music in which UMG and/or UMPG claims rights in posts on their user accounts on the applicable platforms. Their February 8, 2021 press release concerning TikTok is exemplary, and states the following in relevant part:

> **LOS ANGELES, February 8, 2021** — Universal Music Group (UMG), the world leader in music-based entertainment, and TikTok, the short-form video app with a mission to inspire creativity and bring joy, today announced a global agreement that delivers equitable compensation for recording artists and songwriters and significantly expands and enhances the companies' existing relationship, promoting the development of new innovative experiences and the ability to forge deeper bonds between fans and the artists and music they love.
>
> With this agreement, which covers recorded music from artists at UMG's labels and songwriters with Universal Music Publishing Group (UMPG), TikTok users will be more empowered than ever to express themselves through music, soundtrack their video creations with songs about which they are passionate and build communities

---

[10] https://newsroom.tiktok.com/en-gb/tiktok-and-universal-music-group-announce-expanded-global-alliance-uk (last visited July 4, 2025); https://newsroom.tiktok.com/en-us/tiktok-announces-agreement-with-sony-music-entertainment (last visited July 4, 2025).

around artists and music-centered culture. The companies have additionally pledged to experiment with exciting new features. TikTok users will now be able to incorporate clips from UMG's full catalog of music, spanning the company's iconic labels, songwriters and global territories.[11]

54.    None of these press releases published by the Labels distinguish between user accounts associated with individuals, businesses, or other groups or entities when discussing the incorporation of music into a post. For example, the press release by UMG and/or UMPG instead states, *e.g.*, "TikTok users will now be able to incorporate clips from UMG's full catalog of music, spanning the company's iconic labels, songwriters and global territories." *Id.* DSW and Topo are "TikTok users" when they post content on their TikTok accounts, including content that incorporates music in UMG's catalog.

55.    Defendant SMP has similarly issued a press release on January 8, 2018 touting its relationship with Instagram's parent company and encouraging users to include its music in their Instagram posts. Once again, SMP did not distinguish between user accounts associated with individuals, businesses, or other groups or entities when discussing the incorporation of music into a post. SMP's press release states, in relevant part:

> The multi-territory, multi-year deal is the first between the world's leading music publishing company, which oversees a catalog of more than 3 million songs, and Facebook, which has more than 2 billion monthly active users. It provides Sony/ATV's songwriters with a unique opportunity to earn royalties from the use of their music on both Facebook and Instagram.
>
> Sony/ATV's contemporary roster includes The Chainsmokers, Drake, Pink, Ed Sheeran, Sia, Sam Smith, Taylor Swift, Kanye West and Pharrell Williams, while it also represents the songs of legends such as The Beatles, Leonard Cohen, Bob Dylan, Michael Jackson, Carole King and Queen, the Jobete catalog of Motown songs and standards including "Over The Rainbow," "Moon River" and

---

[11] https://www.universalmusic.com/tiktok-and-universal-music-group-announce-expanded-global-alliance/ (last visited July 3, 2025).

"Singin' In The Rain".

> Under the agreement, users will be able to upload and share videos on Facebook, Instagram and Oculus that contain compositions licensed from Sony/ATV's catalog as well as personalize their music experiences with songs from the catalog.[12]

56. Once again, DSW and Topo are "users" of Instagram when they post to their Instagram accounts, including for posts that incorporate music from SMP's catalog. Indeed, on information and belief, the "more than 2 billion monthly active users" promoted by SMP in its press release include business and corporate users and accounts. SMP is specifically encouraging users like DSW and Topo to make posts that incorporate its music.

57. TikTok has also issued a press release with SME's cooperation touting their relationship and encouraging users to include music in their Instagram posts. Yet again, TikTok and SME did not distinguish between user accounts associated with individuals, businesses, or other groups or entities when discussing the incorporation of music into a post. Rather, TikTok's press release quotes Dennis Kooker, President, Global Digital Business and U.S. Sales, Sony Music Entertainment, as encouraging all users to share music on posts on TikTok:

> Short form video clips have developed into an exciting new part of the music ecosystem that contribute to the overall growth of music and the way fans experience it. TikTok is a leader in this space and we are pleased to be partnering with them to drive music discovery, expand opportunities for creativity and support artist careers.[13]

58. The pattern is clear. As with the other press releases discussed above, SME did not distinguish between user accounts associated with individuals, businesses, or other groups or entities. Indeed, just as any other user on TikTok, DSW's and Topo's TikTok posts "drive music

---

[12] https://www.sonymusicpub.com/en/news/1760/sony/atv-and-facebook-sign-ground-breaking-agreement (last visited July 4, 2025).
[13] https://newsroom.tiktok.com/tiktok-announces-agreement-with-sony-music-entertainment?lang=en

20

discovery, expand opportunities for creativity and support artist careers."

59. The foregoing are simply examples of the Labels encouraging users like DSW and Topo to incorporate their music in their Instagram and TikTok posts and assuring users (including DSW and Topo) that all such posts are proper and licensed. On information and belief, all the Labels know of, encourage, and permit users of those platforms to incorporate their music into posts on those accounts.

60. On information and belief, at no time did any of the Labels publicly distinguish between user accounts associated with individuals, businesses, or other groups or entities when discussing when their music can be used in a post in their press releases.

61. The Labels knew or reasonably should have known that Instagram, TikTok and other social media platforms permitted users to add their music to posts on their social media accounts. The Labels also knew that the public Terms of Service either did not distinguish or contained inconsistent statements regarding when accounts associated with individuals, businesses, or other groups or entities are permitted to add music to posts. The Labels remained deliberately silent in the face of these Terms of Service because they benefited financially from posts incorporating music in which they purport to claim rights, including DSW's and Topo's posts. On information and belief, the Labels saw an opportunity to make additional money, beyond the licenses they had already granted the platforms, by deliberately permitting and encouraging uses that they now claim to be infringements.

62. The Labels knew or reasonably should have known that Instagram, TikTok and other social media platforms had Terms of Service that encouraged the use of music in organic posts. The Labels knew or reasonably should have known that Instagram, TikTok and other social media platforms ambiguously defined "commercial use" or promoted non-traditional views on

21

commercial vs. non-commercial or personal use. The Labels deliberately encouraged and permitted commercial uses of music, including by users who earned money from their posts or who used their posts to promote themselves or their brands. On information and belief, the Labels also expressly or implicitly allowed and/or licensed certain "commercial uses" of their copyrights while deliberately obscuring that the Labels would later claim that other alleged "commercial uses" were infringing. Indeed, the Labels have acquiesced to the widespread use of their music in ways that make money for social media users because it also makes the Labels money.

63.     The processes by which Instagram, TikTok, and other social media platforms permitted users to add music to posts on their respective platforms have changed over time. The Labels also knew or reasonably should have known that such processes have been unclear, indicated that such incorporation was authorized by the relevant rights holder, and/or have not clearly delineated between permitted "commercial uses" and what the Labels now claim are impermissible "commercial uses."

64.     On information and belief, the Labels knew of the use of music in posts just like the DBI Entities' accused posts *for years*. Indeed, many if not most of the posts accused in the *WMG* case and *SME* case are many years old. The Labels knew or reasonably should have down that dozens if not hundreds of companies like DSW and Topo were using music for which the Labels claim to hold copyrights in a manner that the Labels now assert to constitute copyright infringement. On information and belief, the Labels did nothing to make public or otherwise state their views concerning such uses prior to sending private threat letters to individual companies like the DBI Entities. Indeed, the DBI Entities would have changed their procedures or negotiated with the Labels years ago had they known of the positions that the Labels have taken today.

65.     On information and belief, the Labels also had the opportunity to learn of and notify

22

the DBI Entities of their views near the time of at least some of the accused social media posts but chose not to do so. In fact, the Labels at no time took steps to indicate to the DBI Entities that incorporating their music into a social media post was not authorized or otherwise might constitute copyright infringement prior to sending their unjustified demand letters to the DBI Entities. The Labels remained deliberately silent because they benefited financially from posts incorporating music in which they purport to claim rights, including DSW's and Topo's posts. Not only did the Label's conduct deprive users such as DSW and Topo of the opportunity to address the Labels' alleged concerns, but their delay permitted any ostensible damages to accrue.

66. The Labels have also accepted and, through their public statements, promoted commercial uses of their music in organic social media posts. For example, on information and belief, the Labels not only permit all users to receive "tips" on posts that incorporate their alleged copyrighted music, but the Labels also permit users who participate in a platform's monetization programs via certain posts to also included allegedly copyrighted music in other posts. The Labels also allow users to build their brand(s) using the Labels' alleged copyrighted music on their accounts. Simply put, the Labels permit users who are content creators to promote and advertise their accounts with the Labels' alleged copyrighted music knowing the content creator will make money from the promotion and advertisement. In short, the Labels freely permit "commercial use" of the Labels' copyrights on organic social media posts.

67. Even notwithstanding the Labels' public pronouncements and conduct encouraging DSW and Topo to use their music in their social media posts, DSW's and Topo's uses of the Labels' music on its social media posts are lawful and proper for additional reasons. For example, on information and belief, the Labels' *own* posts on TikTok, Instagram, and other social media accounts, and/or posts by other rights holders, have independently granted DSW the right to use

23

the Labels' music in the accused posts.

68.     On information or belief, the Labels and/or other rights holders maintain accounts on TikTok, Instagram, and other social media accounts. Those accounts are bound by the same Terms of Service that govern DSW's social media accounts.

69.     By posting their music on TikTok, Instagram and other social media accounts, the Labels grant the relevant platform broad license rights to publish and distribute the music under the applicable Terms of Service, including to permit other users on the social media account to re-use and re-purpose music from other user posts. For example, TikTok's Terms of Service state as follows:

> Users of the Services may be permitted to upload, post or transmit (such as via a stream) or otherwise make available content through the Services including, without limitation, any text, photographs, user videos, sound recordings and the musical works embodied therein, including videos that incorporate locally stored sound recordings from your personal music library and ambient noise ("User Content"). Users of the Services may also extract all or any portion of User Content created by another user to produce additional User Content, including collaborative User Content with other users, that combine and intersperse User Content generated by more than one user.[14]

70.     Instagram and other social media platforms have similar terms of service allowing users to replicate, incorporate, and distribute content from other users of the platform. On information and belief, this includes music from the Labels, either via the Labels' accounts or via the accounts of other rights holders. And, once again, these Terms of Service do not distinguish between user accounts associated with individuals, businesses, or other groups or entities when authorizing the incorporation of music into a post.

71.     On information and belief, the Labels or other rights holders have uploaded,

---

[14] https://www.tiktok.com/legal/page/us/terms-of-service/en (last visited November 5, 2025).

published, or incorporated music in posts on user accounts on Instagram, TikTok, and other social media platforms. On information and belief, these posts include music that is the basis for Defendant's purported cause of action. The Terms of Service of the social media platforms make that music freely available for use by DSW and Topo on the relevant social media platform, including to incorporate in Plaintiffs' own posts on the same platform.

72.     The Labels knew or reasonably should have known that the Terms of Service applicable to their own posts on Instagram, TikTok, and other social media platforms authorized DSW and Topo to incorporate their music into their posts on at least the same platform.

73.     On information and belief, the Labels have also been paid for use of their music on Instagram, TikTok and other social media platforms. Yet the Labels demand to be paid again by the DBI Entities.

74.     Moreover, on information and belief, the Labels are seeking recovery based on social media posts made outside the United States and directed to persons outside of the United States. For example, at least SMP, UMG, and UMPG have accused posts made by a Canadian company in Canada and directed to Canadian users of infringing their U.S. copyrights. Subject matter that is outside of the United States and directed to persons outside the United States is not covered by U.S. copyright law. It cannot be a basis for a legitimate cause of action for copyright infringement in the United States, and the Labels are engaged in copyright misuse for at least this reason (among others).

75.     The Labels, through their speech and conduct, as well as by their misleading silence in the face of the foregoing known policies and practices of social media platforms such as Instagram and TikTok, actively encouraged users, including DSW and Topo, to incorporate their music into posts on user accounts. The Labels encouraged users like DSW and Topo to post the

25

Labels' music on their accounts because those posts made the Labels money. Not only do DSW's and Topo's posts provide free publicity for the Labels and advertise their artists but, on information and belief, the social media platforms are making substantial payments to the Labels so that users like DSW and Topo can incorporate the Labels' music in posts on the platform.

76.     The Labels reasonably expected DSW and Topo to rely upon their misleading statements, conduct, and silence.

77.     DSW and Topo in fact relied upon the Labels' misleading statements, conduct, and silence in creating and publishing the posts that the Labels now claim to constitute copyright infringement. DSW and Topo also relied upon the Terms of Service of the social media platforms on which they have accounts, including TikTok's and Instagram's Terms of Service, and on the Labels' misleading silence in the face of those Terms of Service. The Labels knew that DSW and Topo would rely on their misleading statements, conduct, and silence and profited from the very purported acts of copyright infringement of which they now complain.

78.     Simply put, the Labels have encouraged, licensed, and allowed the very conduct about which they now complain. They have acquiesced to use of their music in organic social media posts by all uses and have abandoned their right to claim copyright infringement for at least such organic social media posts. The Labels' threats against the DBI Entities are an unlawful attempt to extend their copyrights in music for which they have already been paid beyond the limits of U.S. law and are contrary to public policy.

### COUNT I: DECLARATION THAT PLAINTIFFS DO NOT INFRINGE ANY VALID, ASSERTED COPYRIGHT OF DEFENDANT SONY MUSIC ENTERTAINMENT OR THE SONY DEFENDANTS

79.     Plaintiffs repeat and re-allege Paragraphs 1-78 as though fully set forth herein.

80.     There exists an actual and judiciable controversy of sufficient immediacy to warrant the issuance of declaratory relief. Among other things, Defendants SME and the Sony Defendants

26

have accused Plaintiffs and/or their subsidiaries and affiliates of copyright infringement and demanded that they cease and desist from taking certain actions in the ordinary course of their business(es).

81.     SME and the Sony Defendants have accused Plaintiffs of infringing the copyrights identified on Exhibit A to the Complaint in the *SME* case on social media platforms, including the platforms identified herein. *See* Dkt. 1 (Complaint) and 1-1 (Exhibit A to SME and the Sony Defendants' Complaint).

82.     Defendant SME and the Sony Defendants have no basis to assert that Plaintiffs have violated their copyrights on social media. To the extent SME and the Sony Defendants accuse organic posts, the basis for their claims is unstated and unclear and Plaintiffs deny that any infringement occurred.  SME and the Sony Defendants' claims are also barred under one or more of the doctrines of estoppel and implied license; waiver, acquiescence and abandonment; and/or because Plaintiffs' purportedly infringing posts are covered by one or more license agreements with Instagram, TikTok, and other social media platforms and/or because Plaintiffs are third party beneficiaries to such license agreements and because SME and the Sony Defendants are subject to one or more covenants and/or the platforms Terms of Service. Defendant SME and the Sony Defendants have also engaged in conduct that violates the public policies underlying U.S. copyright law, and at least some of the copyrights SME and the Sony Defendants seek to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of SME's and the Sony Defendants' own unclean hands.

83.     Plaintiffs believe that additional grounds exist that preclude any legitimate cause of action for copyright infringement by Defendant SME and the Sony Defendants against Plaintiffs, which may give rise to additional defenses as well as counterclaims. Plaintiffs reserve the right to

assert additional defenses in the future, including in reply to any counterclaims for copyright infringement asserted by the Labels with their Answers to this Complaint as well as via future amendments to this pleading.

84. For at least the reasons set forth above, however, Plaintiffs and/or their subsidiaries and affiliates have not and are not infringing any valid copyrights wholly or partially owned by Defendant SME and the Sony Defendants in the accused social media posts.

85. Plaintiffs and their subsidiaries and affiliates are entitled to a declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any valid copyrights owned by Defendant SME and the Sony Defendants.

86. Moreover, insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by Defendant SME and the Sony Defendants, Plaintiffs and/or their subsidiaries and affiliates are entitled to a set off, mitigation or accounting of any award of damages against them based on one or more of (a) a split with other copyright holders in statutory damages due to overlapping copyright(s) to the same work(s), (b) overlapping ownership interests in such copyrights, and/or (c) a failure to take appropriate or timely action upon notice of the accused uses.

## COUNT II: DECLARATION THAT PLAINTIFFS DO NOT INFRINGE ANY VALID COPYRIGHT OF DEFENDANT SONY MUSIC PUBLISHING (US) LLC

87. Plaintiffs repeat and re-allege Paragraphs 1-78 as though fully set forth herein.

88. There exists an actual and judiciable controversy of sufficient immediacy to warrant the issuance of declaratory relief. Among other things, Defendant SMP has accused Plaintiffs and/or their subsidiaries and affiliates of copyright infringement and demanded that they cease and desist from taking certain actions in the ordinary course of their business(es).

89. Defendant SMP has no basis to assert that Plaintiffs have violated its copyrights on

28

social media. To the extent SMP accuses organic posts, the basis for its claims is unstated and unclear and Plaintiffs deny that any infringement occurred.  SMP's claims are also barred under one or more of the doctrines of estoppel and implied license; waiver, acquiescence and abandonment; and/or because Plaintiffs' purportedly infringing posts are covered by one or more license agreements with Instagram, TikTok, and other social media platforms and/or because Plaintiffs are third party beneficiaries to such license agreements and because SMP is subject to one or more covenants and/or the platforms Terms of Service. Defendant SMP is also engaged in conduct that violates the public policies underlying U.S. copyright law, and at least some of the copyrights SMP seeks to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of SMP's own unclean hands.

90.     Plaintiffs believe that additional grounds exist that preclude any legitimate cause of action for copyright infringement by Defendant SMP against Plaintiffs, which may give rise to additional defenses as well as counterclaims. Plaintiffs reserve the right to assert additional defenses in the future, including in reply to any counterclaims for copyright infringement asserted by the Labels with their Answers to this Complaint as well as via future amendments to this pleading.

91.     For at least the reasons set forth above, however, Plaintiffs and their subsidiaries and affiliates have not and are not infringing any valid copyrights wholly or partially owned by Defendant SMP in the accused social media posts.

92.     Plaintiffs and their subsidiaries and affiliates are entitled to a declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any valid copyrights owned by Defendant SMP.

93.     Moreover, insofar as Plaintiffs and/or their subsidiaries and affiliates are found to

29

have infringed any valid copyright(s) wholly or partially owned by Defendant SMP, Plaintiffs and/or their subsidiaries and affiliates are entitled to a set off, mitigation or accounting of any award of damages against them based on one or more of (a) a split with other copyright holders in statutory damages due to overlapping copyright(s) to the same work(s), (b) overlapping ownership interests in such copyrights, and/or (c) a failure to take appropriate or timely action upon notice of the accused uses.

### COUNT III: DECLARATION THAT PLAINTIFFS DO NOT INFRINGE ANY VALID COPYRIGHT OF DEFENDANT UNIVERSAL MUSIC GROUP

94.     Plaintiffs repeat and re-allege Paragraphs 1-78 as though fully set forth herein.

95.     There exists an actual and judiciable controversy of sufficient immediacy to warrant the issuance of declaratory relief. Among other things, Defendant UMG has accused Plaintiffs and/or their subsidiaries and affiliates of copyright infringement and demanded that they cease and desist from taking certain actions in the ordinary course of their business(es).

96.     Defendant UMG has no basis to assert that Plaintiffs have violated its copyrights on social media. To the extent UMG accuses organic posts, the basis for its claims is unstated and unclear and Plaintiffs deny that any infringement occurred.  UMG's claims are also barred under one or more of the doctrines of estoppel and implied license; waiver, acquiescence and abandonment; and/or because Plaintiffs' purportedly infringing posts are covered by one or more license agreements with Instagram, TikTok, and other social media platforms and/or because Plaintiffs are third party beneficiaries to such license agreements and because UMG is subject to one or more covenants and the platforms Terms of Service. Defendant UMG is also engaged in conduct that violates the public policies underlying U.S. copyright law, and at least some of the copyrights UMG seeks to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of UMG's own unclean hands.

30

97.     Plaintiffs believe that additional grounds exist that preclude any legitimate cause of action for copyright infringement by Defendant UMG against Plaintiffs, which may give rise to additional defenses as well as counterclaims. Plaintiffs reserve the right to assert additional defenses in the future, including in reply to any counterclaims for copyright infringement asserted by the Labels with their Answers to this Complaint as well as via future amendments to this pleading.

98.     For at least the reasons set forth above, however, Plaintiffs and their subsidiaries and affiliates have not and are not infringing any valid copyrights wholly or partially owned by Defendant UMG in the accused social media posts.

99.     Plaintiffs and their subsidiaries and affiliates are entitled to a declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any valid copyrights owned by Defendant UMG.

100.    Moreover, insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by Defendant UMG, Plaintiffs and/or their subsidiaries and affiliates are entitled to a set off, mitigation or accounting of any award of damages against them based on one or more of (a) a split with other copyright holders in statutory damages due to overlapping copyright(s) to the same work(s), (b) overlapping ownership interests in such copyrights, and/or (c) a failure to take appropriate or timely action upon notice of the accused uses.

**COUNT IV: DECLARATION THAT PLAINTIFFS DO NOT INFRINGE ANY VALID COPYRIGHT OF DEFENDANT UNIVERSAL MUSIC PUBLISHING GROUP, INC.**

101.    Plaintiffs repeat and re-allege Paragraphs 1-78 as though fully set forth herein.

102.    There exists an actual and judiciable controversy of sufficient immediacy to warrant the issuance of declaratory relief. Among other things, Defendant UMPG has accused Plaintiffs

31

and/or their subsidiaries and affiliates of copyright infringement and demanded that they cease and desist from taking certain actions in the ordinary course of their business(es).

103. Defendant UMPG has no basis to assert that Plaintiffs have violated its copyrights on social media. To the extent UMPG accuses organic posts, the basis for its claims is unstated and unclear and Plaintiffs deny that any infringement occurred. UMPG's claims are also barred under one or more of the doctrines of estoppel and implied license; waiver, acquiescence and abandonment; and/or because Plaintiffs' purportedly infringing posts are covered by one or more license agreements with Instagram, TikTok, and other social media platforms and/or because Plaintiffs are third party beneficiaries to such license agreements and because UMPG is subject to one or more covenants and the platforms Terms of Service. Defendant UMPG is also engaged in conduct that violates the public policies underlying U.S. copyright law, and at least some of the copyrights UMPG seeks to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of UMPG's own unclean hands.

104. Plaintiffs believe that additional grounds exist that preclude any legitimate cause of action for copyright infringement by Defendant UMPG against Plaintiffs, which may give rise to additional defenses as well as counterclaims. Plaintiffs reserve the right to assert additional defenses in the future, including in reply to any counterclaims for copyright infringement asserted by the Labels with their Answers to this Complaint as well as via future amendments to this pleading.

105. For at least the reasons set forth above, however, Plaintiffs and their subsidiaries and affiliates have not and are not infringing any valid copyrights wholly or partially owned by Defendant UMPG.

106. Plaintiffs and their subsidiaries and affiliates are entitled to a declaratory judgment

32

that they are not infringing, have not infringed, and are not liable for infringing any valid copyrights owned by Defendant UMPG in the accused social media posts.

107. Moreover, insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by Defendant UMPG, Plaintiffs and/or their subsidiaries and affiliates are entitled to a set off, mitigation or accounting of any award of damages against them based on one or more of (a) a split with other copyright holders in statutory damages due to overlapping copyright(s) to the same work(s), (b) overlapping ownership interests in such copyrights, and/or (c) a failure to take appropriate or timely action upon notice of the accused uses.

## COUNT V: DECLARATION THAT PLAINTIFFS DO NOT INFRINGE ANY VALID COPYRIGHT OF DEFENDANT BMG RIGHTS MANAGEMENT (US) LLC

108. Plaintiffs repeat and re-allege Paragraphs 1-78 as though fully set forth herein.

109. There exists an actual and judiciable controversy of sufficient immediacy to warrant the issuance of declaratory relief. Among other things, Defendant BMG has accused Plaintiffs and/or their subsidiaries and affiliates of copyright infringement and demanded that they cease and desist from taking certain actions in the ordinary course of their business(es).

110. Defendant BMG has no basis to assert that Plaintiffs have violated its copyrights on social media. To the extent BMG accuses organic posts, the basis for its claims is unstated and unclear and Plaintiffs deny that any infringement occurred. BMG's claims are also barred under one or more of the doctrines of estoppel and implied license; waiver, acquiescence and abandonment; and/or because Plaintiffs' purportedly infringing posts are covered by one or more license agreements with Instagram, TikTok, and other social media platforms and/or because Plaintiffs are third party beneficiaries to such license agreements and because BMG is subject to one or more covenants and/or the platforms Terms of Service. Defendant BMG is also engaged in

33

conduct that violates the public policies underlying U.S. copyright law, and at least some of the copyrights BMG seeks to assert against Plaintiffs are unenforceable under the doctrines of copyright misuse and because of BMG's own unclean hands.

111. Plaintiffs believe that additional grounds exist that preclude any legitimate cause of action for copyright infringement by Defendant BMG against Plaintiffs, which may give rise to additional defenses as well as counterclaims. Plaintiffs reserve the right to assert additional defenses in the future, including in reply to any counterclaims for copyright infringement asserted by the Labels with their Answers to this Complaint as well as via future amendments to this pleading.

112. For at least the reasons set forth above, however, Plaintiffs and their subsidiaries and affiliates have not and are not infringing any valid copyrights wholly or partially owned by Defendant BMG.

113. Plaintiffs and their subsidiaries and affiliates are entitled to a declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any valid copyrights owned by Defendant BMG.

114. Moreover, insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by Defendant BMG, Plaintiffs and/or their subsidiaries and affiliates are entitled to a set off, mitigation or accounting of any award of damages against them based on one or more of (a) a split with other copyright holders in statutory damages due to overlapping copyright(s) to the same work(s), (b) overlapping ownership interests in such copyrights, and/or (c) a failure to take appropriate or timely action upon notice of the accused uses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter an order awarding them:

34

a.      An Order declaring that Plaintiffs and their subsidiaries and affiliates do not infringe, have not infringed, and are not liable for any infringement(s) of any valid copyright owned by Defendants (in whole or part);

b.      An Order awarding Plaintiffs all attorneys' fees and reasonable expenses incurred in prosecuting this action and defending any counterclaims;

c.      An Order awarding Plaintiffs all costs incurred in prosecuting this action and defending any counterclaims;

d.      An Order awarding Plaintiffs all attorneys' fees, reasonable expenses, and costs incurred in connection with the *SME* case or the transfer or dismissal of the *SME* case;

e.      An Order enjoining Defendants from asserting claims of copyright infringement based on organic social media posts in view of their acquiescence to, and abandonment and wavier of, any such claims;

f.      Insofar as Plaintiffs and/or their subsidiaries and affiliates are found to have infringed any valid copyright(s) wholly or partially owned by any one or more of Defendants, an Order setting off and an accounting for any damages award to account for the ownership interests held by any other Defendant in this lawsuit, one or more of the Plaintiffs in the *WMG* case, and/or any other rights holder, such that the any award against Plaintiffs and/or their subsidiaries and affiliates comport with the law; and,

g.      All such other relief as this Court deems just, proper, or necessary.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

November 10, 2025                                    Respectfully submitted,

**BARNES & THORNBURG LLP**

By: */s/ David M. DeVillers*
David M. DeVillers (0059456), Trial Counsel
Kristopher J. Armstrong (0077799)
41 S. High Street, Suite 3300
Columbus, Ohio 43215
Tel: (614) 628-0096
e-mail: ddevillers@btlaw.com
e-mail: kristopher.argmstrong@btlaw.com

Jeff M. Barron (*pro hac vice*)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 231-1313
e-mail: jeff.barron@btlaw.com

Will Craver (*pro hac vice*)
Barnes & Thornburg LLP
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3880
e-mail: will.craver@btlaw.com

Christina T. Hassel (0088504)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: (216) 621-0150
e-mail: chassel@hahnlaw.com

*Counsel for Plaintiffs Designer Brands Inc., DSW Shoe Warehouse, Inc., and Topo Athletic LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 10, 2025 a true and accurate copy of the foregoing document was filed via the Court's ECT system and will be served on any party who has appeared via that system.

By: */s/ David M. DeVillers*

***Counsel for Plaintiffs Designer Brands Inc., DSW Shoe Warehouse, Inc., and Topo Athletic LLC***