DESIGNER BRANDS, INC., *et al.*,           )
                                           )     **Case No. 2:25-cv-00765-MHW-EPD**
         *Plaintiffs*,                     )
                                           )     **JURY TRIAL DEMANDED**
v.                                         )
                                           )     **Judge Michael H. Watson**
SONY MUSIC ENTERTAINMENT, *et*             )
*al.*,                                     )     **Magistrate Judge S. Courter**
                                           )     **Shimeall**
         *Defendants*.                     )

**PLAINTIFFS' MOTION AND SUPPORTING MEMORANDUM OF LAW TO COMPEL
SONY MUSIC ENTERTAINMENT AND RELATED DEFENDANTS TO ANSWER
INTERROGATORY NOS. 4 AND 6**

Plaintiffs Designer Brands Inc. ("DBI"), DSW Shoe Warehouse, Inc. ("DSW"), and Topo

Athletic LLC ("Topo"; DBI, DSW and Topo are collectively  "Plaintiffs" or the "DBI Entities")

move to compel Defendants Sony Music Entertainment, Sony Music Entertainment US Latin LLC,

Arista Music; Arista Records, LLC; Ultra Records, LLC; Zomba Recording LLC, Records Label,

LLC, and Laface Records, LLC (the "SME Defendants") to answer Interrogatory Nos. 4 and 6.

Exhibit ("Ex.") 1 at Interrogatory No. 4 and Ex. 2 at Interrogatory No. 6.[1] This Motion is being

filed with leave of Court and pursuant to the Court's Order. Dkt. 86.

---

[1] The Exhibits are submitted with the Declaration of Jeff M. Barron ("Barron Decl."). Also
submitted herewith is the Declaration of William Craver ("Craver Decl."), which is Ex. 5 to the
Barron Decl. PAGEIDs are not yet available.

## I.    INTRODUCTION

The DBI Parties filed this lawsuit in part because the SME Defendants have engaged in a pattern of misleading conduct regarding how and when music can be shared on social media platforms like TikTok and Instagram. *See, e.g.,* Dkt. 37 (Amended Complaint) at ¶¶ 1-10, 57 (PAGEID0338-343, 356). The SME Defendants responded by filing a lawsuit in California that accused the DBI Parties of willful copyright infringement because the DBI Parties allegedly shared their music (the "Works"[2]) on social media platforms without the right to do so. Ex. 3 (the SME Defendants' Complaint in the "California lawsuit"[3]). Yet the SME Defendants refuse to answer interrogatories seeking facts concerning their willful infringement claims. Ex. 1 (Interrogatory No. 4) at 6-7; Ex. 2 (Interrogatory No. 6) at 2-3. The SME Defendants have no basis for refusing to answer questions concerning their claims. As explained below, the SME Defendants have the requested information; there is no need for any discovery from the DBI Parties; and the information should be easy for the SME Defendants to provide.

Interrogatory No. 4 asks the SME Defendants to identify when ***they*** shared the Works on the social media platforms at issue in this case. That question is relevant to this case because when the SME Defendants posted the Works on TikTok and Instagram they granted all users—including the DBI Parties—the right to re-use and share the Works under the applicable terms of service.

---

[2] The DBI Parties use the term "Works" to refer to the music that is at issue in this case, including any new musical compositions or sound recordings that the SME Defendants seek to add to their claims in a future amended pleading.

[3] The "California lawsuit" refers to the SME Defendants' overlapping Complaint in the Central District of California accusing the DBI Parties of copyright infringement. *See* Ex. 3 (Original Complaint in *Sony Music Entertainment, et al. v. Designer Brands Inc.*, Case No. 2:25-cv-07285-JC (C.D.Cal.) at Dkt. 1). The DBI Parties and the SME Defendants are currently fighting over whether this Court or the California Court has jurisdiction over this dispute.

*See, e.g.,* Dkt. 37 at ¶ 69 (PAGEID00360) (discussing TikTok's terms of service).[4] The content of the SME Defendants' posts is information solely in the SME Defendants' possession because posts can be hidden from public view automatically (*e.g.*, Instagram "Stories" become private after 24 hours) or because the SME Defendants themselves made the posts private. The SME Defendants can and should answer Interrogatory No. 4 and identify the Works that they posted to their own social media accounts.

Interrogatory No. 6 is a contention interrogatory that seeks the grounds for the SME Defendants' claims of willful copyright infringement. Interrogatory No. 6 need not be answered in full at this stage of the case, as discovery is ongoing, but Interrogatory No. 6 contains elements that can and should be answered now. First, the SME Defendants have alleged that none of the Works are in the TikTok Commercial Music Library, which is a library on TikTok specifically authorized for all commercial uses. *See* Ex. 3 (the SME Defendants' Complaint in the "California lawsuit[5]") at ¶ 58.[6] The SME Defendants should disclose the factual basis for making this assertion.

Second, the DBI Parties have identified Works that seemingly ***are*** in the TikTok Commercial Music Library—***contradicting*** the SME Defendants' assertion that none of the Works are in the TikTok Commercial Library. Ex. 4 (a version of Tate McRae's song "greedy," submitted

---

[4] TikTok and other platforms have changed their terms of service since the relevant time period.

[5] The "California lawsuit" refers to the SME Defendants' overlapping Complaint in the Central District of California accusing the DBI Parties of copyright infringement. *See* Ex. 3 (Original Complaint in *Sony Music Entertainment, et al. v. Designer Brands Inc.*, Case No. 2:25-cv-07285-JC (C.D.Cal.) at Dkt. 1). The DBI Parties and the SME Defendants are currently fighting over whether this Court or the California Court has jurisdiction over this dispute.

[6] See https://ads.tiktok.com/help/article/commercial-music-library (last visited on May 26, 2026). The screen captures and recordings submitted with this motion accessed the TikTok Commercial Music Library through the "Symphony Creative Studio," which is a TikTok tool for businesses. *See* https://ads.tiktok.com/business/en-US/blog/symphony-creative-studio (last visited May 26, 2026).

via fileshare). The SME Defendants dispute that any of their Works are in the TikTok Commercial Music Library and deny that Exhibit 4 is one of the Works. But the presence of so many close copies and variations of the Works in the TikTok Commercial Music Library is highly misleading: among other things, it further deceives users as to what music can be used for so-called "commercial"[7] purposes. The SME Defendants need to explain why close copies and variations of Works are in the TikTok Commercial Library.

Third, the SME Defendants need to explain the factual basis for pursuing direct infringement claims against the DBI Parties. In many if not all cases, the DBI Parties did not upload music to the platforms; the DBI Parties used music that the platforms made available to them from the platforms' music libraries (commercial or otherwise). As discussed in a prior motion to compel in a related case involving Warner Music Group, only the platforms can be the direct infringers where music is sourced from the platforms' music libraries because the platforms perform the actions that could constitute direct infringement (storing, copying, streaming, synchronizing, etc.). *See, e.g., Atlantic Recording Corp., et al. v. Designer Brands Inc., et al.*, Case No. 2:25-cv-00479-MHW-SCS, Dkt. 42 at PAGEID0334-336. Indeed, the platforms essentially function as a streaming music service like Spotify. Under these circumstances, the DBI Parties can, at most, be indirect infringers for allegedly causing the platforms to stream music in a manner that is purportedly outside of the scope of the platforms' licenses. The SME Defendants should state whether they are nonetheless accusing the DBI Parties of direct infringement when the Works are streamed from a platform's music library and, if so, the factual basis for this claim.

All the foregoing information is straightforward, factual, and can be provided now. The Court should order the SME Defendants to answer Interrogatory No. 4. The Court should also

---

[7] As discussed in prior filings, the parties dispute the scope and meaning of the term "commercial" as applied to the accused posts in this case.

order the SME Defendants to answer Interrogatory No. 6 in the following respects: (1) state the basis for the SME Defendants' claim that none of the Works were purportedly in the TikTok Commercial Music Library; (2) explain why close copies and variations of Works are nonetheless in the TikTok Commercial Music Library, and (3) state the basis for the SME Defendants' direct infringement claims against the DBI Parties.

## II.      ARGUMENT

The "Labels"[8]—of which the SME Defendants are one group—claim that the DBI Parties violated their copyrights by sharing copyrighted music on social media platforms like Instagram and TikTok. But this is not the typical copyright infringement lawsuit. In many, if not most (or all) cases, the DBI Parties themselves are not accused of creating new copies of the music. Rather, the SME Defendants licensed their music to the platforms. The platforms then put the SME Defendants' musical Works into various music libraries that were offered to all users, including the DBI Parties. The Labels encouraged users like the DBI Parties to share their music and knew that at least close copies of their music were also in commercial music libraries. In other words, the SME Defendants purported "willful" infringement claims are, instead, a case of misleading public conduct and lucrative behind-the-scenes deals between them and the platforms—which, in the DBI Parties' view, preclude any legitimate copyright claim at all. *See* Dkt. 37 (the DBI Parties' Amended Complaint).

---

[8] The "Labels" refer the record labels and music publishers in this action who claim to own an interest in copyrights to popular music. Most of the Labels have filed Counterclaims in the present lawsuit. As noted, rather than file counterclaims the SME Defendants have moved to dismiss for lack of personal jurisdiction and are pursuing the California lawsuit. Ex. 3.

### A.      Legal Standards

As the Court is aware, the scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1). *In re Davol, Inc./C.R. Bard, Inc., et al.*, No. 2:18-md-2846, 2021 WL 630826, at *1 (S.D. Ohio Feb. 18, 2021). Specifically:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "In the motion to compel context, '[t]he party opposing discovery bears the burden of resisting disclosure.'" *Davis v. American Highwall Mining, LLC*, 570 F.Supp.3d 491, 495 (E.D. Ky. 2020) (citation omitted).

"It is well established that the scope of discovery is within the sound discretion of the trial court." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "[T]he movant bears the initial burden of showing that the information sought is relevant." *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citation omitted). "If the movant makes this showing, 'then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome.'" *Am. Municipal Power, Inc. v. Voith Hydro, Inc.,* No. 2:17-cv-708, 2020 WL 5014914, at *2 (S.D. Ohio, Aug. 25, 2020) (Deavers, M.J.) (quoting *Prado*, 2017 WL 5151377, at *1, and citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)). "'[A] [party] should have access to information necessary to establish her claim, but [ ] a [party] may not be permitted to 'go fishing'; the trial court retains discretion." *Id.*, 2020 WL 5014914, at *2 (quoting *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017)) ("party" substituted for "plaintiff"; other brackets in original) (further citations omitted).

As noted, a key issue in this case concerns the scope of the licenses that the SME

-6-

Defendants granted to the platforms to stream the SME Defendants' music to accompany both commercial and non-commercial posts. There is no dispute that these licenses exist: indeed, the SME Defendants have produced partial copies of some of them. "If the only dispute is over the scope of the license, rather than its existence, 'the copyright owner bears the burden of proving that the defendant's copying was unauthorized.'" *OverDrive, Inc. v. Open eBook Forum,* No.: 1:17-cv-165, 2017 WL 11367906, at *3 (N.D. Ohio Dec. 5, 2017) (citing *Bourne v. Walt Disney Co.,* 68 F.3d 621, 631 (2nd Cir.1995)); *Griego v. Jackson*, No. 2:24-cv-03260-ODW (PVCx), 2025 WL 297150, at *3 (C.D. Cal. Jan. 24, 2025) ("the existence of an implied license is undisputed, and the burden is Griego's to establish that Defendants' accused use is beyond the license's scope."). Thus, it is the SME Defendants' burden to establish that the DBI Parties' conduct exceeded the scope of the SME Defendants' licenses to the social media platforms, including that the Works were not in any commercial music library at the time the accused posts were made.

Interrogatory No. 6 is a contention interrogatory requesting that the SME Defendants state the grounds for their copyright infringement claims—a type of interrogatory expressly authorized by Federal Rule of Civil Procedure 33(a)(2) and Sixth Circuit law. *See, e.g., Starcher v. Correctional Medical Systems, Inc*., 144 F.3d 418, 421 n.2 (6th Cir. 1998) ("'Contention' interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims. The general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required.") (citation omitted); *Krzysiak v. Navistar International Corporation*, No. 3:16-cv-443, 2019 WL 1368862, at *3 n.4 (S.D. Ohio March 26, 2019) ("Contention interrogatories 'ask a party to state the facts upon which it bases a claim or defense' or ask 'for an opinion or contention that relates to fact or the application of law to fact.' …. Even assuming the interrogatories at issue are contention interrogatories, they are

permissible.") (citations omitted). Courts sometime defer complete responses to contention interrogatories until later in discovery, but the DBI Parties are seeking to clarify a few threshold, factual aspects of the SME Defendants' infringement claims via this Motion that only require information within the SME Defendants' current (and exclusive) knowledge.

B.   **The SME Defendants Should Be Compelled To Provide A Complete Answer To Interrogatory No. 4**

Interrogatory No. 4 concerns the DBI Parties' position that they were permitted to use the Works pursuant to the platforms' terms of service because the SME Defendants themselves shared the Works and any damages based on the DBI Parties' use of the Works should be drastically reduced. *See, e.g.,* Dkt. 37 (Amended Complaint) at PAGEID0360-361 (¶¶ 68-72). TikTok's and Instagrams' terms of service stated at the relevant time periods that users may share or re-post music that is posted by other users on the platform. Indeed, one of the fundamental aspects of social media is that one user can freely view, share, react to or otherwise use content posted by other users. This feature of social media is accomplished by a user's grant of broad licenses to the platforms to host, publish, republish, stream and otherwise use content that they upload or share on the platform.

TikTok's and Instagram's terms of service did not exclude businesses and did not prohibit "commercial" uses of content posted by other users when many (and possibly all) the posts were made. For example, TikTok's 2025 Terms of Service stated as follows:

> Users of the Services may be permitted to upload, post or transmit (such as via a stream) or otherwise make available content through the Services including, without limitation, any text, photographs, user videos, sound recordings and the musical works embodied therein, including videos that incorporate locally stored sound recordings from your personal music library and ambient noise ("User Content"). Users of the Services may also extract all or any portion of User Content created by another user to produce additional User Content, including collaborative User Content with other users, that combine and intersperse User Content generated by

more than one user.[9]

Meta (*e.g.,* Instagram and Facebook) has similar Terms of Service that licensed the platforms to allow users to share or re-post content from other users. Again, there is no evident bar on sharing user content based on a business or "commercial" use:

3.3 The permissions you give us

We need certain permissions from you to provide our services:

**1. Your content:** Some content that you share or upload, such as photos or videos, may be protected by intellectual property laws.

You retain ownership of the intellectual property rights (things like copyright or trademarks) in any such content that you create and share on Facebook and other you use. Nothing in these Terms takes away the rights you have to your own content. You are free to share your content with anyone else, wherever you want.

However, to provide our services we need you to give us some legal permissions (known as a "license") to use this content. This is solely for the purposes of providing and improving our Products and services as described in Section 1 above.

**2. Permission to use content you create and share:** Specifically, when you share, post, or upload content that is covered by intellectual property rights on or in connection with our Products, you grant us a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your and settings). This means, for example, that if you share a photo on Facebook, you give us permission to store, copy, and share it with others (again, consistent with your settings) such as Meta Products or service providers that support those products and services. This license will end when your content is deleted from our systems.[10]

---

[9] Why TikTok changed this term after the DBI Parties filed this lawsuit is an issue that will be explored in discovery. The version quoted above is available via the Internet Archive, however, at the following URL:
https://web.archive.org/web/20251105183328/https://www.tiktok.com/legal/page/us/terms-of-service/en
[10] https://www.facebook.com/terms?section_id=section_1 (last visited April 7, 2026).

The foregoing provisions did not exclude either the SME Defendants or the DBI Parties and were not made subject to music use limitations found elsewhere in the Terms of Service that prohibited the "commercial use" of music. Thus, if the SME Defendants shared the Works on social media, it may defeat their claims. At a minimum, if the SME Defendants shared the Works it may substantially reduce damages as the SME Defendants would have offered the Works for all types of commercial use for effectively no charge. Moreover, the extent to which the SME Defendants posted the Works is exclusively within the SME Defendants' possession, custody and control as a public review will not identify (a) any posts the SME Defendants have made private or (b) ephemeral posts (such as Instagram Stories) that disappear from public review after a short period of time but which typically remain accessible to the poster (*i.e.*, the SME Defendants).

Thus, the DBI Parties' Interrogatory No. 4 requested the SME Defendants to "Identify each post (including all **Organic Posts**) by **You** or any of the artists of the **Subject Songs** on any of the **Media Sites** that contain any part of a **Subject Song**, including, but not limited to, by identifying all documents and things relating to any such post(s)." Ex. 1 at 6 (emphasis in original). Although the DBI Parties do not ask the Court to compel the SME Defendants to answer this Interrogatory as to their "artists" at this time as it is not yet clear the extent to which the SME Defendants control their artists' accounts, the SME Defendants can and should answer Interrogatory No. 4 as to their own accounts. The Court should order them to do so. To the extent that the SME Defendants raise burdensomeness concerns, the DBI Parties are prepared to bear the burden of reviewing posts and participate in the audit of the SME Defendants' accounts—just as the SME Defendants did when they recently audited the DBI Parties' social media accounts.

### C.     Interrogatory No. 6

Interrogatory No. 6 is a contention interrogatory that asks the SME Defendants to state the grounds for their copyright infringement claims. Although the SME Defendants have argued that

Interrogatory No. 6 cannot be answered without divulging privileged or protected information, and/or that it seeks pure opinions of law, this type of interrogatory is authorized by Federal Rule of Civil Procedure 33(a)(2) and Sixth Circuit law. *See, e.g., Strarchger*, 144 F.3d at 421 n.2. Moreover, Interrogatory No. 6 expressly seeks facts. Ex. 2 at 2-3. A complete answer to Interrogatory No. 6 can wait until later in discovery but, at this stage, the SME Defendants should provide a partial answer to clarify three threshold aspects of the SME Defendants' infringement claims by stating the facts: (1) supporting their contention that none of the Works are in the TikTok Commercial Music Library, (2) explaining why close versions of some Works nonetheless appear to be in the TikTok Commercial Music Library, and (3) supporting the SME Defendants' direct infringement claims against the DBI Parties if the SME Defendants contend that the DBI Parties directly infringe their copyrights based on music streamed from a platform's music library. All this information is within the SME Defendants' exclusive knowledge and should be provided now. The DBI Parties also request that the Court require the SME Defendants to timely supplement their response(s) to Interrogatory No. 6 as discovery continues.

      **1.     The SME Defendants Should Answer Interrogatory No. 6 To State The Basis For Their Allegation That Works Could Not Have Been Taken From The TikTok Commercial Music Library**

First, all parties agree that there are so-called "commercial" music libraries on the platforms—particularly TikTok—that contain music freely usable for all commercial purposes (the "TikTok Commercial Music Library"). Recognizing this fact, the SME Defendants alleged in the co-pending California lawsuit that the DBI Parties could not have taken the music at issue in this case from the TikTok Commercial Music Library:

> TikTok also provides business users with an audio library of pre-cleared music for commercial content and ad creation (called the "Commercial Music Library"), ***but the SME Recordings are not part of that library and DSW could not have obtained any of them from that library***.

Ex. 3 at ¶ 58 (emphasis added). That is a specific, factual assertion made by the SME Defendants based on information solely in their possession, custody and control. Interrogatory No. 6 requests, *inter alia*, that the SME Defendants provide the grounds for making this assertion. Ex. 2 at 2. The Court should order the SME Defendants to do so.

> **2. The SME Defendants Should Also Explain Why Works Are Nonetheless In The TikTok Commercial Music Library**

Notwithstanding the SME Defendants' assertion that the Works are not in the TikTok Commercial Music Library, the DBI Parties have found what appear to be copies or close copies of the SME Defendants' Works in the TikTok Commercial Music Library while this case has been pending. For example, Tate McRae's song "greedy" is a basis for the SME Defendants' claims against the DBI Parties. Ex. 3 at Appendix A (PAGEID0039 at Nos. 143 and 144). ***But an apparent version of Tate McRae's "greedy" was in TikTok's Commercial Music Library at least as of May 21, 2026***. Barron Decl. at ¶ 5 and Ex. 4 (audiovisual recording of song submitted by fileshare). The DBI Parties (and others) could have obtained this version of Tate McRae's "greedy" from the TikTok commercial music library while this lawsuit has been pending—exactly what the SME Defendants have alleged cannot happen.

The SME Defendants should explain why versions of many Works are in the TikTok Commercial Music Library. Ex. 5, Craver Decl. at ¶¶ 3, 5. For example, the DBI Parties have found the following:

1. What appears to be a version of the exact sound recording and composition in the TikTok Commercial Music Library (as in the case of Tate McRae's "greedy");

2. The sound recording and composition sampled in a remix or DJ mix in the TikTok Commercial Music Library;

3. The sound recording and composition are sped up, slowed down or pitch shifted in the TikTok Commercial Music Library;

4. The sound recording's and composition's instrumentals are used as the underlying

beat for a rapper in the TikTok Commercial Music Library;

5.  The sound recording's and composition's instrumentals are used as the underlying beat for a vocal cover of the work in the TikTok Commercial Music Library;

6.  The underlying instrumentals and composition are explicitly available for commercial use with the vocals removed the TikTok Commercial Music Library; and/or

7.  The song is covered by other artists but made to sound extremely similar to the original, and the result is in the TikTok Commercial Music Library.

Ex. 5, Craver Decl. at ¶ 3.

Information concerning whether (and which) Works are in the TikTok Commercial Music Library in some format is within the knowledge of the SME Defendants. Moreover, the presence of variations or versions of Works in the TikTok Commercial Music Library is highly misleading to businesses and other users like the DBI Parties as it indicates that the Work is available for all commercial uses. At a minimum, the presence of so many variations of Works in the TikTok Commercial Music Library is inconsistent with the SME Defendants' assertion that the DBI Parties are willful copyright infringers. The SME Defendants should state the facts that support their infringement claim in view of the contents of the TikTok Commercial Music Library, including their basis for continuing to assert that the DBI Parties are willful infringers.

Indeed, the DBI Parties expect that at least some of their current and former employees will testify that they believed that they were using Works from a commercial music library in the accused posts. The presence of versions of SME Works in the current TikTok Commercial Music Library supports this expected testimony.[11] Moreover, the fact that music is constantly being added and removed from the TikTok Commercial Music Library suggests that a Work may have been in

---

[11] Due to the nature in which the accused posts were created, as well as the age of many of the SME Defendants' allegations, there are very few documents documenting how the accused social media posts were created or the source of any music in them.

the Commercial Music Library at the time the DBI Parties made the accused post but then later removed. The SME Defendants should have information as to when and which of their music is in the TikTok Commercial Music Library as well as whether they caused unauthorized copies or variations of Works to be removed from the Library. The SME Defendants should provide this information.

The fact that versions of Works are being added to and removed from the TikTok Commercial Library also supports the DBI Parties' position that a so-called commercial use of a Work is not entitled to significant damages even if the Work was not in a commercial music library at the time of the accused post. For example, if a version of a Work was in the TikTok Commercial Music Library for months or years and then was removed shortly before a Work was added to an accused post, or if an accused post was made and a version of the Work subsequently entered the TikTok Commercial Music Library, the SME Defendants may only be able to seek a *de minimis* damages. Again, the SME Defendants need to come clean and provide the facts as to why close copies and variations of the Works are in the TikTok Commercial Music Library.

It *may* be that the SME Defendants ultimately take the position that all Works or variations thereof that were ever in the TikTok Commercial Music Library were added by third parties without the SME Defendants' approval. For example, the apparent sample from Tate McRae's "greedy" in the TikTok Commercial Music Library is under the name of a different artist ("CryJaxx," *see* Ex. 4) and, as noted, the SME Defendants claim it is not a true copy of "greedy." The DBI Parties have also observed tracks being removed from the TikTok Commercial Music Library while this case has been pending, which suggests that the SME Defendants and/or others are policing the TikTok Commercial Music Library and removing unauthorized music. Ex. 5, Craver Decl. at ¶ 5. But all this simply reinforces that the SME Defendants must answer

-14-

Interrogatory No. 6 by explaining why copies or near copies of the Works are (or have been) in the TikTok Commercial Music Library. If the SME Defendants knew that the TikTok Commercial Music Library was filled with copies, near copies and variations of the Works, even if unauthorized, it at a minimum undercuts the SME Defendants' willful infringement claims.

### 3. The SME Defendants Need To Provide The Factual Basis For Their Claim That The DBI Parties Could Be Direct Infringers When Music Is Held And Streamed By The Platform Itself

The Court should also order the SME Defendants to state the factual basis for their direct infringement claim against the DBI Parties as it pertains to music sourced from the platforms' music libraries (commercial or otherwise). Ex. 3 at ¶¶ 68-76. The SME Defendants have recognized that, to the extent that music was sourced from a platform's music library, the SME Defendants' claims against the DBI Parties may only be for contributory (indirect) infringement, not direct infringement. Specifically, Paragraph 80 of the SME Defendants' Complaint in the California Lawsuit states as follows:

> Separately, to the extent the users of social media platforms *or the platforms are directly liable for the infringement caused by the Infringing Posts from DSW's own social media accounts*, DSW is liable as a *contributory copyright infringer* for making the Infringing Posts available to both the platforms and users and subscribers of the platforms and/or by causing the Infringing Posts to be copied, made available, and transmitted over the platforms.

Ex. 3 at ¶ 80 (emphasis added). The SME Defendants should state whether they are also pursuing direct infringement claims against the DBI Parties based on Works sourced from a platform's music library (commercial or otherwise) and, if so, the factual basis for those direct infringement claims.

## III. CONCLUSION

The Court should compel the SME Defendants to provide a complete answer to Interrogatory No. 4—or, at a minimum, let the DBI Parties audit the SME Defendants' social

media accounts so that the DBI Parties can acquire the information requested by Interrogatory No. 4. In addition, the Court should compel the SME Defendants to provide a partial answer to Interrogatory No. 6 by providing the following information: (1) the basis for the SME Defendants' claim that the Works "are not part of [the TikTok Commercial Music] library and DSW could not have obtained any of them from that library" (Ex. 3 at ¶ 58); (2) an explanation as to why Works or variations thereof are nonetheless seem to be in the TikTok Commercial Music Library; and (3) a statement as to whether the SME Defendants' direct infringement claims are based on Works in a platform's music library (commercial or otherwise) and, if they are, the factual basis for such a claim. The Court should further order the SME Parties to timely supplement their answer to Interrogatory No. 6 as discovery continues.

Date: May 27, 2026

Respectfully submitted,

By: /s/ David M. DeVillers
David M. DeVillers (0059456), Trial Attorney
Kristopher J. Armstrong (0077799), Co-Counsel
41 S. High Street, Suite 3300
Columbus, Ohio 43215
Tel: (614) 628-0096
Fax: (614) 628-1433
e-mail: ddevillers@btlaw.com
e-mail: kristopher.argmstrong@btlaw.com

-and-

Jeff M. Barron (*pro hac vice*)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 231-7735
Fax: (317) 231-7433
e-mail: jeff.barron@btlaw.com

-and-

Will Craver (*pro hac vice*)
BARNES & THORNBURG LLP

-16-

2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3880
Fax: (310) 284-3894
e-mail: will.craver@btlaw.com

-and-

Christina Hassel (0088504)
HAHN LOESER & PARKS LLP
200 Public Square
Suite 2800
Cleveland, OH 44114
Tel: (216) 621-0150
Fax: (216) 241-2824
e-mail: chassel@hahnlaw.com

***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2026, I caused a copy of the foregoing document to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served on all attorneys of record registered with the Court's ECF/CM system.

/s/ David M. DeVillers
Trial Attorney for Plaintiffs